[No. S123133. Nov. 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE EDWARD BRENDLIN, Defendant and Appellant.

COUNSEL

Elizabeth Campbell, under appointment by the Supreme Court, and James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves and Michael P. Farrell, Assistant Attorneys General, John G. McLean, Janet E. Neeley, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAXTER, J.**—The issue presented in this case is whether evidence seized in a search incident to a lawful arrest based upon a valid outstanding warrant nonetheless must be suppressed because the discovery of the warrant occurred during an unlawful traffic stop. Case law from other state and federal courts uniformly holds that the discovery of an outstanding arrest warrant prior to a search incident to arrest constitutes an intervening circumstance that may—and, in the absence of purposeful or flagrant police misconduct, *will*—attenuate the taint of the antecedent unlawful traffic stop. We join this chorus of cases and reverse the judgment of the Court of Appeal, which had ordered suppression of the evidence seized from defendant's person and from the vehicle in which he was a passenger on the sole ground that the outstanding warrant would not have been discovered "[b]ut for the unlawful vehicle stop."

BACKGROUND

Around 1:40 a.m. on November 27, 2001, Sutter County Sheriff's Deputy Robert Charles Brokenbrough effected a traffic stop of a brown 1993 Buick Regal with expired registration tabs on Franklin Avenue in Yuba City. Prior to the stop, Deputy Brokenbrough confirmed through dispatch that the car's registration had expired two months earlier but that a renewal application was "in process." Although Deputy Brokenbrough observed prior to the stop that a temporary operating permit with the number "11" (indicating an expiration date at the end of November) had been taped to the rear window, he could not determine from his vantage point whether the permit matched the vehicle. He decided to stop the Buick to investigate further.

Deputy Brokenbrough approached the driver's side of the Buick and asked the driver, Karen Simeroth, for her driver's license. He also asked defendant,

the passenger, to identify himself, since he recognized defendant as one of the Brendlin brothers, Scott or Bruce, and recalled that one of them had absconded from parole supervision. During the inquiry, Deputy Brokenbrough observed receptacles in the car containing substances used in the production of methamphetamine. In response to the deputy's inquiry, defendant identified himself. The deputy returned to his patrol vehicle and verified that defendant was a parolee at large and had an outstanding no-bail warrant for his arrest. (See Pen. Code, §§ 3000, subd. (b)(8), 3060.)

After backup arrived, Deputy Brokenbrough ordered defendant out of the car at gunpoint and placed him under arrest for the parole violation. The entire episode, from the time Deputy Brokenbrough asked Simeroth for her driver's license to his discovery that defendant had an outstanding warrant, lasted a couple of minutes.

Police found an orange syringe cap on defendant's person during a search incident to arrest. They found two hypodermic needles (one of which was missing a syringe cap), two baggies containing a total of 12.43 grams of marijuana, and a baggie containing 0.46 grams of methamphetamine on Simeroth's person during a patsearch and a subsequent search incident to her arrest. Materials used in manufacturing methamphetamine were found in the backseat of the Buick.

After a hearing on defendant's motion to suppress, the superior court held that defendant had not been seized within the meaning of the Fourth Amendment of the United States Constitution until Deputy Brokenbrough ordered him out of the car at gunpoint and placed him under arrest and that, even if he had been seized at the inception of the traffic stop, the stop was lawful. Defendant then pleaded guilty to manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)) and admitted a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)). He was sentenced to four years in prison.

The Court of Appeal reversed in a published opinion. It held that a traffic stop necessarily results in a detention (and, hence, a seizure) (*People v. Glaser* (1995) 11 Cal.4th 354, 363 [45 Cal.Rptr.2d 425, 902 P.2d 729]) of both the driver and any passengers. The Court of Appeal further found that the seizure was unlawful in that Deputy Brokenbrough, who knew that the vehicle's application to renew its registration was in process and who had seen the temporary permit in the rear window, had "at most a hunch" that "the temporary operating permit displayed in the window might not belong to the car and, thus, it was being unlawfully operated as an unregistered vehicle." The court ruled that the evidence seized from defendant as well as from the Buick should have been suppressed on the ground that the evidence would not have been discovered "[b]ut for the unlawful vehicle stop."

This court, in a four-to-three decision, reversed the Court of Appeal and held that a passenger in a vehicle subject to a traffic stop is not seized within the meaning of the Fourth Amendment in the absence of additional circumstances that would indicate to a reasonable person that he or she was the subject of the peace officer's investigation or show of authority. (*People v. Brendlin* (2006) 38 Cal.4th 1107, 1111 [45 Cal.Rptr.3d 50, 136 P.3d 845].) The dissenting opinion, authored by Justice Corrigan, argued that a traffic stop entails the seizure of a passenger even when the driver is the sole target of police investigation. (*Id.* at p. 1125.)

The United States Supreme Court granted certiorari and reversed in a unanimous opinion, holding that a traffic stop subjects a passenger, as well as a driver, to a seizure within the meaning of the Fourth Amendment. (*Brendlin v. California* (2007) 551 U.S. 249 [168 L.Ed.2d 132, 127 S.Ct. 2400].) The high court remanded the matter to enable "the state courts to consider in the first instance whether suppression turns on any other issue." (*Id.* at p. 263 [127 S.Ct. at p. 2410].)

On remand, we granted the Attorney General's request that the parties be directed to file supplemental briefing as to whether the existence of defendant's outstanding arrest warrant—which was discovered *after* the unlawful traffic stop but *before* the search of his person or the vehicle—dissipated the taint of the illegal seizure and rendered suppression of the evidence seized unnecessary.[1]

---

[1] We reject at the outset defendant's objection, raised for the first time at oral argument, that the People forfeited this justification by failing to assert it at the suppression hearing. Although the People may not then have asserted that the discovery of the outstanding warrant was an intervening circumstance justifying the search, they did introduce evidence of the outstanding warrant at the suppression hearing and did argue that the search was authorized by the deputy's discovery that defendant was a parolee. Accordingly, defendant had sufficient opportunity to respond to the claim of attenuation in the trial court, and he does not claim that he was prejudiced in any way by the People's shift from a claim of attenuation based on his parole status to a claim of attenuation based on his outstanding parole warrant. (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138 [219 Cal.Rptr. 186, 707 P.2d 248].) There is thus no bar to our consideration of the claim of attenuation for the first time on appeal where, as here, the record is sufficient to support such a finding. (*People v. Boyer* (2006) 38 Cal.4th 412, 449 [42 Cal.Rptr.3d 677, 133 P.3d 581]; accord, *People v. Foskey* (1990) 136 Ill.2d 66 [143 Ill.Dec. 257, 554 N.E.2d 192, 202]; *State v. Martin* (2008) 285 Kan. 994 [179 P.3d 457, 463]; *Cox v. State* (2007) 397 Md. 200 [916 A.2d 311, 313, 318 & fn. 4].)

Defendant also contends that the People failed to preserve the issue of attenuation in the Court of Appeal or present it in their petition for review. We find that the People adequately presented the issue to the Court of Appeal, to this court in their petition for review, and to the United States Supreme Court, before requesting permission to brief it here. Even if the People had failed to preserve the issue in those courts, however, we would not deem it forfeited, inasmuch as "the issues the Attorney General raised have sufficient statewide importance to warrant an opinion from this court," and "this case presents those issues." (*People v. Braxton* (2004) 34 Cal.4th 798, 809 [22 Cal.Rptr.3d 46, 101 P.3d 994].)

DISCUSSION

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. (*People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].) We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. (*Ibid.*)" (*People v. Ramos* (2004) 34 Cal.4th 494, 505 [21 Cal.Rptr.3d 575, 101 P.3d 478].) In evaluating whether the fruits of a search or seizure should have been suppressed, we consider only the Fourth Amendment's prohibition on unreasonable searches and seizures. (*People v. Carter* (2005) 36 Cal.4th 1114, 1141 [32 Cal.Rptr.3d 759, 117 P.3d 476].)

■ The People concede that the traffic stop of the vehicle in which defendant was traveling was not supported by reasonable suspicion of criminal activity, and it is clear from the high court's opinion that the stop effected a seizure of defendant. It is thus undisputed that defendant was unlawfully seized at the time of the traffic stop. Further, the Court of Appeal was correct in finding that but for the unlawful traffic stop, Deputy Brokenbrough would not have discovered the outstanding warrant for defendant's arrest and would not then have conducted the search incident to arrest that revealed the contraband. This does not mean, however, that the fruits of the search incident to that arrest must be suppressed. "[E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." (*Hudson v. Michigan* (2006) 547 U.S. 586, 592 [165 L.Ed.2d 56, 126 S.Ct. 2159].) " '[N]ot . . . all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' " (*People v. Sims* (1993) 5 Cal.4th 405, 445 [20 Cal.Rptr.2d 537, 853 P.2d 992], quoting *Wong Sun v. United States* (1963) 371 U.S. 471, 487–488 [9 L.Ed.2d 441, 83 S.Ct. 407].) "[B]ut-for cause, or 'causation in the logical sense alone,' [citation] can be too attenuated to justify exclusion . . . ." (*Hudson v. Michigan*, 547 U.S. at p. 592; see also *Brown v. Illinois* (1975) 422 U.S. 590, 603 [45 L.Ed.2d 416, 95 S.Ct. 2254] (*Brown*).)

■ Although the significance of an arrest warrant in attenuating the taint of an antecedent unlawful traffic stop is an issue of first impression for this court, the general framework for analyzing a claim of attenuation under the Fourth Amendment is well settled. (*People v. Boyer, supra*, 38 Cal.4th at

p. 448.) "[T]he question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." (*United States v. Crews* (1980) 445 U.S. 463, 471 [63 L.Ed.2d 537, 100 S.Ct. 1244].) "Relevant factors in this 'attenuation' analysis include the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct." (*Boyer, supra*, 38 Cal.4th at p. 448, citing *Brown, supra*, 422 U.S. at pp. 603–604.)

Where, as here, the issue is whether the discovery of an outstanding arrest warrant has attenuated the taint of an antecedent unlawful seizure, other state and federal courts have likewise invoked the three *Brown* factors—i.e., the temporal proximity of the unlawful seizure to the subsequent search of the defendant's person or vehicle, the presence of intervening circumstances, and the flagrancy of the official misconduct in effecting the unlawful seizure. (*U.S. v. Simpson* (8th Cir. 2006) 439 F.3d 490, 495; *U.S. v. Green* (7th Cir. 1997) 111 F.3d 515, 521; *McBath v. State* (Alaska Ct.App. 2005) 108 P.3d 241, 248; *State v. Frierson* (Fla. 2006) 926 So.2d 1139, 1143; *State v. Page* (2004) 140 Idaho 841 [103 P.3d 454, 459]; *People v. Mitchell* (2005) 355 Ill.App.3d 1030 [291 Ill.Dec. 786, 824 N.E.2d 642, 649]; *State v. Martin, supra*, 179 P.3d at p. 463; *Birch v. Com.* (Ky.Ct.App. 2006) 203 S.W.3d 156, 159; *State v. Hill* (La. 1998) 725 So.2d 1282, 1284; *Myers v. State* (2006) 395 Md. 261 [909 A.2d 1048, 1062]; *State v. Thompson* (1989) 231 Neb. 771 [438 N.W.2d 131, 137]; *State v. Soto* (Ct.App. 2008) 143 N.M. 631 [179 P.3d 1238, 1244–1245], cert. granted (2008) 143 N.M. 667 [180 P.3d 674]; *Jacobs v. State* (2006) 2006 OKCR 4 [128 P.3d 1085, 1087]; *Reed v. State* (Tex.App. 1991) 809 S.W.2d 940, 946; see also *People v. Hillyard* (1979) 197 Colo. 83 [589 P.2d 939, 940–941] [declining to suppress evidence where the discovery of the outstanding warrant was preceded by an invalid stop, but without explicitly invoking each of the above factors]; *Ruffin v. State* (1991) 201 Ga.App. 792 [412 S.E.2d 850, 852–853] [same]; *State v. Lamaster* (Mo.Ct.App. 1983) 652 S.W.2d 885, 887 [same]; *State v. Allen* (2008) 222 Ore.App. 71 [191 P.3d 762, 765–767] [same]; *State v. Rothenberger* (1968) 73 Wn.2d 596 [440 P.2d 184, 186–187] [same].) Indeed, "[t]hese factors have been applied in virtually every federal and state case involving a search following an alleged unlawful traffic stop." (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1143 [49 Cal.Rptr.3d 811].)

We find these authorities, which are consistent with our own case law concerning attenuation generally (see *People v. Boyer, supra*, 38 Cal.4th at p. 448), persuasive. Applying the *Brown* factors to the circumstances here, we conclude that the outstanding warrant, which was discovered prior to any

search of defendant's person or of the vehicle, sufficiently attenuated the taint of the unlawful traffic stop.

As to the first *Brown* factor, we note that only a few minutes elapsed between the unlawful traffic stop and the search incident to arrest that uncovered the challenged evidence. This is the typical scenario "in essentially every case in this area." (*McBath v. State, supra,* 108 P.3d at p. 248; see *U.S. v. Green, supra,* 111 F.3d at p. 521 [about five minutes]; *State v. Frierson, supra,* 926 So.2d at p. 1152 (dis. opn. of Pariente, C. J.) ["no more than a few minutes"]; *State v. Page, supra,* 103 P.3d at p. 459 ["a minimal lapse of time"]; *State v. Martin, supra,* 179 P.3d at p. 463 ["short amount of time"]; *State v. Hill, supra,* 725 So.2d at p. 1284 ["any time lapse was negligible"]; *Cox v. State, supra,* 916 A.2d at p. 322 [two minutes].) We note as well that the close temporal proximity of an unlawful arrest and a confession worked against a finding of attenuation in *Brown* itself (*Brown, supra,* 422 U.S. at pp. 604–605) and in other cases where the alleged intervening factor between the illegal police conduct and the challenged evidence was a volitional act by the defendant, such as resisting arrest or flight. (See *U.S. v. Green, supra,* 111 F.3d at p. 522.) In those situations, though, the temporal proximity between the illegal police conduct and the defendant's response has a logical connection in that the closer these two events are in time, the more likely the defendant's response was influenced by the illegality or that the illegality was exploited. (*Ibid.*) Conversely, where the intervening circumstance is a lawful arrest under an outstanding arrest warrant, the defendant's conduct is irrelevant, and the police cannot be said to have exploited the illegal seizure that preceded the discovery of the outstanding warrant. (*Ibid.*)

Accordingly, some courts have held that the first *Brown* factor is not relevant to the attenuation of the taint of an antecedent illegal seizure where the intervening circumstance is an outstanding arrest warrant. (E.g., *U.S. v. Simpson, supra,* 439 F.3d at p. 495 [the attenuation analysis "need not focus on the first *Brown* factor"]; *Reed v. State, supra,* 809 S.W.2d at pp. 946–947 [the first *Brown* factor "does not bear on the attenuation"].) Other courts have reasoned that the first *Brown* factor is nonetheless relevant (and tends to favor suppression of the evidence) but is not dispositive. (*U.S. v. Green, supra,* 111 F.3d at p. 521; *State v. Frierson, supra,* 926 So.2d at p. 1144; *State v. Martin, supra,* 179 P.3d at p. 463; *State v. Hill, supra,* 725 So.2d at p. 1284; *Cox v. State, supra,* 916 A.2d at p. 322 [the factor is "ambiguous"]; see generally *Brown, supra,* 422 U.S. at p. 603 ["No single fact is dispositive."].) We need not decide which line of authority is correct because even the courts in the latter category "have all but unanimously concluded that, in this kind of situation, this first *Brown* factor is outweighed by the others." (*McBath v. State, supra,* 108 P.3d at p. 248.)

■ As to the second *Brown* factor, the case law uniformly holds that an arrest under a valid outstanding warrant—and a search incident to that arrest—is an intervening circumstance that tends to dissipate the taint caused by an illegal traffic stop. A warrant is not reasonably subject to interpretation or abuse (see *Hudson v. Michigan, supra,* 547 U.S. at p. 595; *U.S. v. Green, supra,* 111 F.3d at p. 522), and the no-bail warrant here supplied legal authorization to arrest defendant that was completely independent of the circumstances that led the officer to initiate the traffic stop. (*State v. Thompson, supra,* 438 N.W.2d at p. 137.) Moreover, no search of defendant's person or of the vehicle was undertaken until Deputy Brokenbrough had confirmed the existence of the outstanding warrant. (*U.S. v. Green, supra,* 111 F.3d at p. 523; *State v. Lamaster, supra,* 652 S.W.2d at p. 887.) The challenged evidence was thus the fruit of the outstanding warrant, and was not obtained through exploitation of the unlawful traffic stop. (*Reed v. State, supra,* 809 S.W.2d at p. 947.)

■ The third *Brown* factor, the flagrancy and purposefulness of the police misconduct, is generally regarded as the most important because "it is directly tied to the purpose of the exclusionary rule—deterring police misconduct." (*U.S. v. Simpson, supra,* 439 F.3d at p. 496; see generally *Brown, supra,* 422 U.S. at p. 604 [deeming this factor "particularly" relevant].) Defendant contends that the illegality here was flagrant in that Deputy Brokenbrough "had no reasonable suspicion that any occupant of the vehicle had violated the law when he made the traffic stop" and that he had at most "a hunch" the driver was operating an unregistered vehicle. But a mere "mistake" with respect to the enforcement of our traffic laws does not establish that the traffic stop was pretextual or in bad faith. (*State v. Frierson, supra,* 926 So.2d at p. 1144; see also *Cox v. State, supra,* 916 A.2d at p. 321.) Deputy Brokenbrough testified that he ordered the traffic stop in order to investigate the vehicle's registration, that he did see the temporary sticker in the rear window prior to the stop, but that (in his experience) such stickers sometimes belonged to a different vehicle or had been falsified. Although the People have conceded that this was insufficient to justify a temporary detention to permit further investigation, the insufficiency was not so obvious as to make one question Deputy Brokenbrough's good faith in pursuing an investigation of what he believed to be a suspicious registration, nor does the record show that he had a design and purpose to effect the stop "in the hope that something [else] might turn up." (*Brown, supra,* 422 U.S. at p. 605; see also *U.S. v. Simpson, supra,* 439 F.3d at p. 496; *McBath v. State, supra,* 108 P.3d at p. 250 [no indication that the police "knowingly overstepped their authority or that their conduct was an egregious misuse of authority"]; *State v. Page, supra,* 103 P.3d at p. 459 [no evidence that the illegal seizure was flagrant or for an improper purpose]; *State v. Hill, supra,* 725 So.2d at p. 1287 [the illegal seizure "was not particularly egregious and did not amount to a

flagrant abuse of police power"].) In particular, there is no evidence at all that the deputy "invented a justification for the traffic stop in order to have an excuse to run [a] warrant check[]" (*People v. Rodriguez, supra,* 143 Cal.App.4th at p. 1143) or that a search of the vehicle or its occupants was the "ultimate goal" of the initial unlawful detention. (*State v. Martin, supra,* 179 P.3d at p. 463; see also *Myers v. State, supra,* 909 A.2d at p. 1067; *Reed v. State, supra,* 809 S.W.2d at p. 948.)

■ Defendant contends that suppression is necessary to deter the police from randomly stopping citizens for the purpose of running warrant checks, but we are not persuaded. Where the seizure is flagrantly or knowingly unconstitutional or is otherwise undertaken as a fishing expedition, the third *Brown* factor will make it unlikely that the People would be able to demonstrate an attenuation of the taint of the initial unlawful seizure. (*People v. Mitchell, supra,* 824 N.E.2d at p. 650 [suppressing the evidence where "the sole apparent purpose of the detention is to check for a warrant"].) But "a chance discovery of an outstanding arrest warrant" in the course of a seizure that is later determined to be invalid is an intervening circumstance that does not trigger the same concerns. (*Myers v. State, supra,* 909 A.2d at p. 1067; accord, *Jacobs v. State, supra,* 128 P.3d at pp. 1088–1089; *Fletcher v. State* (Tex.Ct.App. 2002) 90 S.W.3d 419, 421.) "It is only in the unusual case where the police, after a questionable stop, discover that an occupant is wanted on an arrest warrant that the intervening circumstances exception will apply." (*U.S. v. Green, supra,* 111 F.3d at p. 523.) Those are precisely the facts here.

■ Thus, despite the unlawfulness of the initial traffic stop, the facts of this encounter demonstrate that the drug paraphernalia found on defendant's person and in the car was not the fruit of the unlawful seizure. The police searched defendant's person and the vehicle only after they discovered a valid outstanding warrant for his arrest. In connection with that arrest, the police were authorized to conduct a search incident to it.[2] Under these circumstances, the outstanding warrant sufficiently attenuated the connection between the unlawful traffic stop and the subsequent discovery of the drug paraphernalia.

Finally, defendant is mistaken in contending that, despite the foregoing, suppression is required under our decisions in *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496] and *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430, 146 P.3d 965]. In those cases, we held that a search cannot be validated by the discovery, after the fact, that the defendant was subject to a probation or parole search condition. (*Jaime P., supra,* 40

---

[2] The United States Supreme Court will revisit the scope of this doctrine in *Arizona v. Gant,* No. 07-542, certiorari granted February 25, 2008.

Cal.4th at p. 133.) "This is so, we reasoned, because 'whether a search is reasonable must be determined based upon the circumstances *known to the officer when the search is conducted.*' " (*Ibid.*, quoting *Sanders, supra,* 31 Cal.4th at pp. 332, 334; see also *In re Tyrell J.* (1994) 8 Cal.4th 68, 96 [32 Cal.Rptr.2d 33, 876 P.2d 519] (dis. opn. of Kennard, J.) ["that a search may not be justified by a parole search condition of which the searching officer is unaware, should be dispositive of this case"].) Here, however, Deputy Brokenbrough never relied on any search condition, and no search in fact occurred until the deputy discovered an outstanding warrant for defendant's arrest. Thus, *Sanders* and *Jaime P.* are distinguishable and do not aid defendant. (See *McBath v. State, supra,* 108 P.3d at pp. 247–248; *State v. Page, supra,* 103 P.3d at p. 460; *State v. Hill, supra,* 725 So.2d at pp. 1285–1286, fn. 6.)

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.