Filed 7/17/13  P. v. Hall CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KAJUAN HALL et al.,<br><br>    Defendants and Appellants. | B243839<br><br>(Los Angeles County<br>Super. Ct. No. SA078122) |

APPEAL from judgments of the Superior Court of Los Angeles County.  James R. Dabney, Judge.  Affirmed.

Hancock and Spears and Alan E. Spears, under appointment by the Court of Appeal, for Defendant and Appellant Kajuan Hall.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant Maurice Newton.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants, Kajuan Hall (Hall) and Maurice Newton (Newton) appeal from their burglary conviction entered upon a guilty plea. They challenge only the trial court's denial of their motion to suppress evidence gained as a result of the placement of a global positioning system (GPS) tracking device on their automobiles. We find no error and confirm the judgments.

## BACKGROUND

### 1. Procedural history

Hall, Newton, and a codefendant William Jones (Jones)[1] were charged with first degree residential burglary in violation of Penal Code section 459.[2] The information alleged that on June 30, 2011, defendants and Jones entered an inhabited dwelling with the intent to commit a felony. For purposes of section 667, subdivision (a)(1), and the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), the information alleged that Hall had suffered a prior serious or violent felony conviction and he served a prison term within the meaning of section 667.5, subdivision (b).

After the trial court heard and denied defendants' motion to suppress evidence pursuant to section 1538.5, subdivision (a)(1)(A), both defendants entered into plea agreements. Hall pled no contest to the charge and admitted the prior conviction in exchange for an eight-year prison term, consisting of the middle term of four years, doubled as a second strike, and the dismissal of the remaining allegations. Newton pled no contest to the charge in exchange for the low term of two years in prison.

On September 4, 2012, the trial court sentenced defendants according to the plea agreements. Hall was given a total of 128 days of custody credit and Newton was given four days of custody credit. The trial court ordered both defendants to pay victim

---

[1]    Jones is not a party to this appeal. We affirmed his conviction in a nonpublished opinion. (See *People v. Jones* (Mar. 27, 2013, B242987).) Here, when we refer to defendants collectively, we mean only Hall and Newton.

[2]    All further statutory references are to the Penal Code unless indicated otherwise.

2

restitution of $300 as well as mandatory fines and fees; and to provide biological samples. Both defendants filed timely notices of appeal.

## 2. Suppression hearing

At the hearing on the suppression motion, it was stipulated that no warrant had been issued at the time that a GPS tracking device was placed on Jones's car and Newton's SUV. Los Angeles Sheriff's Department (LASD) Detective Joseph Cabral testified that defendants' homes and automobiles were placed under surveillance after a confidential informant provided evidence that defendants and Jones were running a burglary ring. In addition to following defendants' cars in LASD vehicles, deputies occasionally used airplane surveillance. After two days, it became apparent that following the defendants' cars was difficult due to their driving patterns. GPS tracking devices were then placed on the two defendants' vehicles.

Newton parked his SUV near an intersection near his home. After another week of surveillance on June 30, 2011, Detective Cabral checked the GPS monitor to confirm that Newton's SUV was parked near his home, and then took up his surveillance position. Detective Cabral had observed that the SUV had metal California license plates attached. Shortly after he began following Newton, however, he saw that the rear license plate had been replaced with a paper one. Detective Cabral followed Newton's SUV to a carwash where Jones was picked up, and then to Hall's residence. Before Jones and Newton left the carwash, Detective Cabral had notified other detectives on the team who drove to the carwash in seven unmarked cars. The detectives all followed Newton's SUV to the I-10 freeway, where the airplane joined the surveillance team. Defendants drove from the I-10 to the I-405 freeway and ultimately into a residential neighborhood.

The deputies in the cars and the airplane were in communication with one another by radio. Detective Cabral lost sight of the SUV once or twice and consulted the detectives in the airplane as well as the detective in possession of the GPS monitor. The airplane was not equipped with a GPS monitor, and its occupants never lost actual sight of Newton's SUV until after it stopped at a residence on Comstock Avenue. Detective Cabral testified that although the GPS information was available during the surveillance,

3

it was unnecessary as detectives in cars or in the airplane kept the SUV in sight from the time it left Newton's home until it reached a residence on Comstock Avenue. The detectives travelling in cars lost sight of the SUV when it entered the residential neighborhood and then relied on the airplane for direction. Detective Cabral received word from the airplane that Newton's SUV had stopped at the Comstock Avenue residence and then moved out of sight as Hall walked toward the house. The GPS tracker showed the SUV parked nearby.

Detective Alvarado drove to the Comstock Avenue address, parked and watched the house. He reported seeing two men later identified as Jones and Hall walking toward the front from the rear yard of the house. Jones was carrying a pillow case filled with items. As Detective Alvarado was transmitting that information, he saw the SUV pull into the driveway of the same house, park and after Jones placed the pillow case in the back, the two men got inside and they all drove away.

Detective Alvarado then went to check the house. He reported that a rear window had been smashed and the interior room looked as though it had been ransacked. The deputies in the airplane maintained surveillance of the SUV until Detective Cabral and other deputies in a marked patrol car conducted a traffic stop of the SUV and detained the defendants.

## DISCUSSION

### I. Standard of review

"'In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]' [Citation.] In evaluating whether the fruits of a search or seizure should have been suppressed, we consider only the Fourth Amendment's prohibition on unreasonable searches and seizures. [Citation.]" (*People v. Brendlin* (2008) 45 Cal.4th 262, 268 (*Brendlin*).)

4

**II.** *United States v. Jones* **and the "trespassory test"**

Both defendants rely on the recent decision of the United States Supreme Court in *United States v. Jones* (2012) ___ U.S. ___ [132 S.Ct. 945] (*Jones*), in which the court upheld the ruling of the circuit court of appeals that the installation and use of a GPS device without a valid warrant violated the Fourth Amendment. (*Id.* at pp. 948, 953.) The high court held that the Fourth Amendment exclusionary rule applies not only "when government officers violate a person's 'reasonable expectation of privacy,'" but also when a trespass to the defendant's personal property ("effects"), is "conjoined with . . . an attempt to find something or to obtain information." (*Id.* at pp. 950-951 & fn. 5.) The court termed the latter test "the common-law trespassory test"; and explained that it was separate from and existed prior to the reasonable-expectation-of-privacy test articulated in Justice Harlan's concurrence in *Katz v. United States* (1967) 389 U.S. 347, 360 (*Katz* test). (*Jones*, *supra*, 132 S.Ct. at pp. 950-952.)

The court concluded that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" (*Jones*, *supra*, 132 S.Ct. at p. 949, fn. omitted.) The court did not overrule *United States v. Knotts* (1983) 460 U.S. 276 (*Knotts*), in which the court had upheld the warrantless use of a "beeper" (another form of electronic monitoring device) to trace the movements of a vehicle on public roads. (*Jones*, *supra*, 132 S.Ct. at pp. 953-954.) Instead it found *Knotts* distinguishable because there was neither a trespass nor a reasonable expectation of privacy in that case and thus no search within the meaning of the Fourth Amendment. (*Jones*, *supra*, 132 S.Ct. at pp. 951-952.) In *Knotts*, officers did not touch the defendant's effects; the beeper was not placed on the car but inside a can purchased by the defendant from someone who gave his consent to the placement, and the court reasoned that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." (*Knotts*, *supra*, 460 U.S. at pp. 277-279, 281-282; see also *United States v. Karo* (1984) 468 U.S. 705, 711-715 (*Karo*).)

5

Thus conduct identical to that of the deputies in this case is now a trespassory search under *Jones*.  (See *Jones*, *supra*, 132 S.Ct. at pp. 950-951 & fn. 5.)[3]  However, the GPS device was placed on Newton's SUV in 2011, prior to the publication of *Jones*.  In 2011, the high court *held* that "[s]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." (*Davis v. United States* (2011) ___ U.S. ___ [131 S.Ct. 2419, 2423-2424] (*Davis*).)  The court explained that "when the police conduct a search in compliance with binding precedent that is later overruled . . . suppression would do nothing to deter police misconduct . . . , and . . . would come at a high cost to both the truth and the public safety . . . ." (*Ibid.*)

*Jones* impliedly overruled such precedent in California.  In *People v. Zichwic* (2001) 94 Cal.App.4th 944 (*Zichwic*), the appellate court held that police officers were not required to obtain a warrant prior to attaching an electronic monitoring device to the undercarriage of the defendant's truck while the truck was parked in his open driveway.  The *Zichwic* court upheld the search for two reasons:  the defendant was on parole and subject to search without a warrant; and the defendant had no expectation of privacy on public highways or the exterior body of his truck while it was parked in an open driveway.  (*Id.* at pp. 952-955.)  Finding no California authority on point, the *Zichwic* court relied in part on the reasoning of *Knotts* and *Karo* as well as a Ninth Circuit case, *United States v. McIver* (9th Cir.1999) 186 F.3d 1119, 1126-1127 (*McIver*), which rejected a contention that placing a tracking device on the defendant's SUV while it was parked in an open driveway constituted a search within the meaning of the Fourth Amendment.  (*Zichwic*, *supra*, 94 Cal.App.4th at pp. 955-956.)[4]

---

[3]  At oral argument Hall conceded he lacked "standing" to assert *Jones*, as there was no GPS device placed on Hall's car and no evidence that Hall had any ownership or possessory interest in Newton's SUV.  Regardless, we need not resolve the issue here as we conclude that *Jones* is inapplicable.

[4]  Hall contends that the *Zichwic* court's second holding was dictum and thus did not constitute binding precedent.  We disagree.  As the court based its decision on two separate grounds, neither was dictum.  (*King v. Pauly* (1911) 159 Cal. 549, 554-555; see *People v. Rudd* (1998) 63 Cal.App.4th 620, 633, fn. 3.)  Trial courts would have been

6

Recently the Ninth Circuit applied *Davis* to affirm the denial of a suppression motion after finding its own precedent, including *McIver*, permitted a similar search before *Jones*. (*United States v. Pineda-Moreno* (9th Cir. 2012) 688 F.3d 1087, 1090-1091.) The court there concluded that even if the placement of tracking devices were unconstitutional under *Jones*, suppression would be unwarranted because the law enforcement officers acted in objectively reasonable reliance on binding precedent when they attached the devices. (*Pineda-Moreno, supra*, at pp. 1090-1091.) That reasoning applies equally here, as the record demonstrates that in 2011, the deputies placed the GPS device on Newton's SUV while it was parked near an intersection outside his home and used it to follow his movements on public streets and highways. The deputies' conduct was thus lawful under *Zichwic*.

Defendants contend that *Davis* has no application here because the prosecutor conceded at the hearing on the motion that the attachment of the GPS device constituted an unlawful search under *Jones*. Newton also invokes the rule that a prosecutor may not change theories on appeal. (See *People v. Carr* (1974) 43 Cal.App.3d 441, 444-445.) We note however, that each of the defendants have relied on *Jones* to challenge the judgment by raising the issue in their opening briefs and arguing that the use of a GPS device violated the Fourth Amendment. Indeed, as we have concluded the use of the GPS device was lawful under existing California authority (*Zichwic*, *supra*, 94 Cal.App.4th at pp. 955-956), defendants' challenge is wholly dependent on the implied overruling of *Zichwic* by *Jones*. Whether that implicit repudiation applies retroactively presents an issue of law which the prosecutor's concession cannot preclude us from reviewing. (See *Bradley v. Clark* (1901) 133 Cal. 196, 210 [reviewing court's "duty [is] to declare the law as it is, and not as either appellant or respondent may assume it to be"]; *People v. Sanders* (2012) 55 Cal.4th 731, 740.)

---

bound by the decision. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450.)

It is axiomatic that a question of pure law may not be waived or forfeited. A new legal theory to justify a search may be raised on appeal when it presents a question of law based solely on the evidence in the record. (See *People v. Brendlin*, *supra*, 45 Cal.4th at p. 267, fn. 1; *Higgason v. Superior Court* (1985) 170 Cal.App.3d 929, 942.) Newton contends however, that if we consider respondent's arguments here, additional evidence would be required to demonstrate the deputies' good faith belief that their conduct was lawful. We find no merit to Newton's contention, as we cannot agree that the deputies' subjective thoughts or evidence of actual reliance on appellate precedent is required to demonstrate "objectively reasonable reliance on binding appellate precedent." (*Davis*, *supra*, 131 S.Ct. at pp. 2423-2424.) The Supreme Court's use of the term "compliance" interchangeably with "reliance" (*id.* pp. 2423-2424), suggests that objectively reasonable compliance with binding pre-*Jones* precedent will suffice. Further, the court explained "objectively reasonable reliance" by reference to the reasoning of *United States v. Leon* (1984) 468 U.S. 897 (*Leon*). (*Davis*, *supra*, 131 S.Ct. at pp. 2427-2428.) In *Leon*, the Supreme Court enunciated an exception to the exclusionary rule when an officer acted in good faith while relying on an invalid search warrant. (*Leon*, *supra*, at pp. 922-924.) The court explained that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal . . . ." (*Id.* at p. 923.) This means that the objective reasonableness of an officer's *conduct*, not his thoughts, determines his good faith belief or reliance. (*People v. Willis* (2002) 28 Cal.4th 22, 29, fn. 3; see *Illinois v. Krull* (1987) 480 U.S. 340, 353.)

Moreover, the Supreme Court observed in *Davis* that the exclusionary rule had never been applied to lawful police conduct, and made clear that the intent of its decision was to prevent the exclusion of *legally* obtained evidence. (See *Davis*, *supra*, 131 S.Ct. at pp. 2427, 2429, citing *Herring v. United States* (2009) 555 U.S. 135, 144.) Requiring evidence of subjectively reasonable reliance or actual knowledge of the binding precedent here would result in the exclusion of legally obtained evidence, the very consequence the court intended to avoid.

As the facts in this record are sufficient to show the deputies acted in objectively reasonable compliance with *Zichwic*, regardless of whether they knew of its existence, we conclude that under binding appellate precedent the attachment of the GPS device was not unlawful at the time of defendants' arrest. (*Zichwic*, *supra*, 94 Cal.App.4th at pp. 955-956.) We also conclude that publication of *Jones* the following year did not make any evidence found as a result of the device retroactively subject to the exclusionary rule. (*Davis*, *supra*, 131 S.Ct. at pp. 2423-2424.)

## III. The *Katz* test

Hall contends that the judgment should be reversed on the ground that any electronic tracking of a vehicle violates the reasonable expectation of privacy of all the vehicle's occupants.[5] He refers to the explanation in *Jones* that the court did not intend to make trespass the sole test of when the transmission of electronic signals constitutes a search, or to eliminate the *Katz* test when electronic signals are monitored without a physical trespass. (See *Jones*, *supra*, 132 S.Ct. at p. 953.)

Hall acknowledges the Supreme Court did not overrule *Knotts*, which held that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." (*Knotts*, *supra*, 460 U.S. at p. 281.) He contends that the criticism of the majority's trespass-based rule by Justice Alito in his concurring opinion in *Jones*, in which Justices Ginsburg, Breyer, and Kagan joined, signals a resolve to overrule *Knotts*. Not at all. Justice Alito cited *Knotts* with approval for the proposition that "relatively *short-term* monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable." (*Jones*, *supra*, 131 S.Ct. at p. 964 (conc. op. of Alito, J.), citing *Knotts*, *supra*, 460 U.S. at pp. 281-282, italics added.) He explained that for law enforcement to "secretly monitor and catalogue every single movement of an individual's car for a very long period" would exceed society's reasonable expectations of privacy

---

[5]     Newton joins in all of Hall's arguments that might benefit him.

sometime before the four weeks that agents tracked Jones's car in this manner. (*Jones*, *supra*, 131 S.Ct. at p. 964.)

Thus, nothing in Justice Alito's concurring opinion suggests that he would find the nearly negligible one-week use of GPS monitoring in this case exceeded the privacy expectations of a passenger in Newton's SUV. When the tracking device was attached to Newton's vehicle it was already under live surveillance by many law enforcement officers. The deputies continued their live surveillance and Detective Cabral made a quick check of the monitor to see if the vehicle was at Newton's residence before taking up his morning position. On the day of defendants' arrest, the GPS monitor was used several times on the freeway and once as the SUV moved out of sight after reaching the residence on Comstock Avenue. It was not necessary, as deputies in cars or the airplane maintained visual contact from the time the SUV left Newton's home until it moved away from the Comstock Avenue residence. By the time it returned, Detective Alvarado was in position there as a result of a report from the airplane. The GPS monitor was checked when the airplane lost visual contact, but unnecessarily so, as the SUV had returned to the Comstock residence to retrieve Hall and Jones.

## VI. Attenuation and harmless error

Respondent contends that these same facts demonstrate attenuation under the inevitable discovery doctrine or the independent source doctrine as found by the trial court. (See generally *Murray v. United States* (1988) 487 U.S. 533, 536-541; *Wong Sun v. United States* (1963) 371 U.S. 471, 487-488.) We need not undertake that analysis, as we have found that the deputies' conduct resulting in defendants' arrest was lawful at the time and did not violate defendants' reasonable expectations of privacy. Regardless, if the attachment of the GPS device had been unlawful, a strong argument for attenuation could be made under "the three *Brown* factors -- i.e., the temporal proximity of the unlawful seizure to the subsequent search of the defendant's person or vehicle, the presence of intervening circumstances, and the flagrancy of the official misconduct in effecting the unlawful seizure. [Citations.]" (*Brendlin*, *supra*, 45 Cal.4th at p. 269, citing *Brown v. Illinois* (1975) 422 U.S. 590, 603-604 (*Brown*).)

10

The third factor, the flagrancy of police misconduct is "the most important because 'it is directly tied to the purpose of the exclusionary rule -- deterring police misconduct.' [Citations.]" (*Brendlin*, *supra*, 45 Cal.4th at p. 271; see also *Brown*, *supra*, 422 U.S. at p. 604.) The absence of facts supporting this factor would most certainly justify denial of defendants' suppression motions. There was no significant use of the GPS device leading to defendants' arrest and the discovery of evidence. The only electronic data used that day was Detective Cabral's verification that defendant was home before the deputies started that day's surveillance. All other information was gained by actual visual surveillance, either from automobiles or from an airplane, which is still lawful under *Jones*. (See *Jones*, *supra*, 132 S.Ct. at pp. 953-954.)

A violation of the Fourth Amendment is subject to the harmless error test of *Chapman v. California* (1967) 386 U.S. 18, 24. (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 306-307.) Thus, reversal is not warranted if any error in denying a suppression motion was harmless beyond a reasonable doubt. (*People v. Moore* (2011) 51 Cal.4th 1104, 1128.) We conclude that even if the placement of the GPS device had been unlawful, defendant's motion would most certainly have been denied due to the de minimus nature of any police misconduct. For the same reason, we would find any error in denying the motion harmless beyond a reasonable doubt.

## DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, P.J.      _____, J.
BOREN                    ASHMANN-GERST

11