Filed 3/2/22  P. v. Shabazz CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDWELE ABIADE SHABAZZ,<br><br>    Defendant and Appellant. | B310160<br><br>Los Angeles County<br>Super. Ct. No. BA487360 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge. Reversed and remanded with directions.

Jason A. Lieber, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael Keller and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Andwele Abiade Shabazz pled no contest to possession of a firearm, and the trial court sentenced him to 32 months in state prison. On appeal, Shabazz argues the gun evidence was obtained in violation of his Fourth Amendment rights. For the reasons discussed below, we agree with Shabazz and remand the case to the trial court.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Shabazz with assault upon a peace officer (Pen. Code,[1] § 245, subd. (c); count one) and possession of a firearm by a felon (§ 29800, subd. (a)(1); count two). With respect to both counts, the information alleged Shabazz sustained a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) With respect to count one, the information alleged he sustained a prior serious felony conviction. (§ 667, subd. (a)(1).)

Shabazz pled no contest to count two and admitted the prior strike allegation attached to that count. Pursuant to the plea agreement, the trial court dismissed count one and the remaining allegations. The trial court sentenced Shabazz to a 16-month lower term on count two, doubled to 32 months because of the prior strike.

Shabazz timely appealed.

---

[1]     All further undesignated statutory references are to the Penal Code.

## FACTUAL BACKGROUND

The following facts are taken from Shabazz's preliminary hearing. On May 18, 2020, at approximately 8:43 p.m., Los Angeles Police Officers Marco Peralta and Michael Barragan were in the parking lot of a McDonald's located at 505 Florence Avenue when they contacted Shabazz.[2] The officers were in uniform and drove a marked police car. They were in the parking lot investigating criminal conduct such as loitering, prostitution, and trespassing, which Officer Peralta testified was common in that parking lot. Officer Peralta could not recall whether the McDonald's was open or closed when he entered the parking lot.

Shabazz's car was in a parking space facing a wall. The officers parked their car five or six feet behind Shabazz's car in such a way that he would have to maneuver around them to leave. Shabazz was in the driver's seat of his car when the officers made contact with him.[3] Officer Peralta went to the driver's side of Shabazz's car, and Officer Barragan went to the passenger side. They asked Shabazz to roll down his window and saw that he was alone. They asked for his identification. Shabazz did not immediately provide identification, and he seemed nervous. Officer Peralta smelled burnt marijuana, and he believed Shabazz could have been committing the crime of smoking marijuana in public or having an open marijuana container in his car. Shabazz said he had been smoking cigarettes and showed the officers his pack of cigarettes. Officer Peralta

---

[2]     Officer Peralta testified at Shabazz's preliminary hearing.

[3]     The officers questioned the people in the car next to Shabazz's before approaching his car.

noticed Shabazz was wearing a fanny pack, and believed the fanny pack may have contained a weapon or narcotics.

Officer Peralta asked Shabazz to remove the fanny pack then exit the car. Shabazz unclipped the fanny pack at some point, but he did not exit his car. Instead, he drove his car into the police car in an attempt to flee, but could not maneuver around the police car. Shabazz collided into the police car twice. Officer Peralta was walking to the police car during the first collision, and he was in the police car during the second collision.[4] Shabazz was going approximately five miles per hour during the collisions. The officers yelled at Shabazz to stop and turn off his car. After failing to flee, Shabazz eventually complied with the officers' commands.

Officer Peralta held Shabazz at gunpoint until other officers arrived. After directing Shabazz to exit his car and handcuffing him, Officer Peralta searched the car and discovered a loaded firearm in the fanny pack.[5] He did not find marijuana in Shabazz's car.

---

[4] The officers spoke with Shabazz for a total of two or three minutes before he drove into their car.

[5] Officer Peralta believed Shabazz's car contained evidence of assault with a deadly weapon on a police officer.

# DISCUSSION

## The Gun Was Obtained in Violation of Shabazz's Fourth Amendment Rights

As discussed in greater detail below, the officers detained Shabazz when they parked behind him, and the detention was unlawful because the officers did not have reasonable suspicion of criminal activity when they initiated the detention. Moreover, although the officers had the authority to search Shabazz when they arrested him for hitting their car, they did not have the authority to search his car, where they ultimately discovered the gun. The gun evidence was therefore obtained in violation of Shabazz's Fourth Amendment rights.

### A. Applicable Legal Principles

"The Fourth Amendment protects against unreasonable searches and seizures. [Citations.]" (*People v. Casares* (2016) 62 Cal.4th 808, 837, disapproved on another ground by *People v. Dalton* (2019) 7 Cal.5th 166, 214.) "In reviewing the trial court's suppression ruling, we defer to its factual findings if supported by substantial evidence. We independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment. [Citation.]" (*People v. Brown* (2015) 61 Cal.4th 968, 975.)

A detention subject to Fourth Amendment requirements "occurs when the officer, by means of force or show of authority, has restrained a person's liberty." (*People v. Zaragoza* (2016) 1 Cal.5th 21, 56 (*Zaragoza*).) "'When the actions of the police do not show an unambiguous intent to restrain' . . . the test for determining if a seizure occurred is whether, "'"in view of all of

the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave[.]" [Citations.]"'" (*People v. Kopatz* (2015) 61 Cal.4th 62, 79.)

"[A] detention must be supported by reasonable suspicion the person is involved in criminal activity. [Citation.]" (*Zaragoza, supra*, 1 Cal.5th at p. 56.) Reasonable suspicion exists "'when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Casares, supra*, 62 Cal.4th at pp. 837-838.)

If evidence is obtained following a detention not supported by reasonable suspicion, the question "'is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the "taint" imposed upon that evidence by the original illegality.' [Citation.]" (*People v. Brendlin* (2008) 45 Cal.4th 262, 268-269.)

Police officers are allowed to conduct warrantless searches incident to lawful arrests. (*Arizona v. Gant* (2009) 556 U.S. 332, 338 (*Gant*).) This exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. [Citations.]" (*Ibid.*) "[A] search incident to arrest may only include 'the arrestee's person and the area "within his immediate control" . . .' [Citation.]" (*Id.* at p. 339.) "That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." (*Ibid.*)

## B. Relevant Proceedings

Shabazz filed a motion to suppress the gun evidence, arguing the gun was discovered because of an unlawful detention conducted without reasonable suspicion. After Officer Peralta testified at the preliminary hearing, the trial court heard argument on the motion to suppress. The trial court concluded Shabazz was not detained when the officers blocked his car. The trial court then stated it believed the reason for the encounter was to give Shabazz a loitering citation, though the trial court acknowledged Officer Peralta had not stated that was his reason. The trial court denied the motion to suppress.

Shabazz filed a section 995 motion to set aside the information, again arguing his Fourth Amendment rights were violated. At the hearing on the section 995 motion, the parties submitted. Having reconsidered its previous rulings, the court reached the following conclusions: (1) the officers detained Shabazz when they parked behind him; (2) the officers had probable cause to arrest Shabazz for assault on a peace officer for hitting their car; and (3) even assuming the initial detention was unlawful, nothing was seized during it, and the gun was properly obtained during a lawful search of the fanny pack incident to Shabazz's arrest. For these reasons, the court denied Shabazz's motion to set aside the information.

## C. Analysis

We start with the question whether the officers detained Shabazz when they parked behind him. We, like trial court, conclude the answer is yes. It is true that the officers, in parking behind Shabazz, did not show an unambiguous intent to restrain him. We conclude, however, that a reasonable person in Shabazz's position would have believed, upon being blocked in by the officers, that he was not free to terminate the encounter. (See *People v. Kopatz*, *supra*, 61 Cal.4th at p. 79.) At the very least, it is likely someone in Shabazz's position would have reasonably believed he needed the officers' consent to leave and for them to move their car before he could drive out of the parking lot. We therefore reject the Attorney General's contention that the officers, in blocking Shabazz's car, engaged in a consensual encounter with him rather than a detention.

The next question is whether the officers had reasonable suspicion Shabazz was involved in criminal activity when they blocked his car. (*Zaragoza*, *supra*, 1 Cal.5th at p. 56.) We conclude the answer is no. When the officers blocked Shabazz's car, all they knew was he had parked in a restaurant parking lot known for prostitution and loitering. This fact alone did not rise to the level of reasonable suspicion. (See *People v. Souza* (1994) 9 Cal.4th 224, 241 [mere presence in a high crime area, without more, will not support a finding of reasonable suspicion sufficient to justify a detention].)

Having concluded Shabazz was detained without reasonable suspicion, the question becomes whether the taint of illegality was removed from the firearm evidence due to an intervening circumstance, namely the search incident to Shabazz's arrest for hitting the officers' car. (*People v. Brendlin*,

*supra*, 45 Cal.4th at pp. 268-269.) We conclude the answer is no. Although Shabazz hitting the police car justified the officers arresting him and conducting a lawful search incident to that arrest, the Fourth Amendment prohibited the officers from searching Shabazz's car under the circumstances presented in this case.

The United States Supreme Court's decision in *Gant, supra,* 556 U.S. 332 is controlling. Because the parties did not address *Gant* in their initial briefs, we asked them to file supplemental letter briefs addressing its applicability. For the reasons discussed in the following paragraph, we agree with Shabazz that reversal is warranted under *Gant*.

In *Gant*, the defendant "was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car." (*Gant, supra,* at p. 335.) Once he was in the back of the patrol car, "officers searched his car and discovered cocaine in the pocket of a jacket on the backseat." (*Ibid*.) The Supreme Court concluded the search of Gant's car violated the Fourth Amendment. (*Gant, supra,* at p. 335.) In support of its conclusion, the Court explained "police may search incident to arrest only the space within an arrestee's "'immediate control,'" meaning 'the area from within which he might gain possession of a weapon or destructible evidence.' [Citation.]" (*Ibid*.) This principle governs Shabazz's case. Once the officers removed Shabazz from the car and arrested him, objects in his car were no longer in his immediate control for purposes of a lawful search incident to arrest. And although the Supreme Court explained "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle" (*Gant, supra,*

9

556 U.S. at p. 335), here, we cannot conclude it was reasonable for the officers to believe evidence of Shabazz hitting the police car might be found in his vehicle. The evidence of Shabazz hitting the police car was the officers' witnessing of the incident. In short, the officers' search of Shabazz's car could not have furthered the interests the search incident to arrest exception to the warrant requirement is intended to promote—namely officer safety and safeguarding evidence of the offense of arrest. (*Id.* at p. 339.)

In its supplemental letter brief, the Attorney General raises a separate argument why the search of Shabazz's car was lawful, contending "the officers had probable cause to search [Shabazz's] car and containers therein for evidence that [Shabazz] had recently driven under the influence of marijuana." We are not persuaded. It is true, as the Attorney General points out, that "[o]ther established exceptions to the warrant requirement authorize a vehicle searched under additional circumstances when safety or evidentiary concerns demand." (*Gant*, *supra*, 556 U.S. at p. 346.) One such exception is when there is "probable cause to believe a vehicle contains evidence of criminal activity." (*Id.* at p. 347.) Here, however, we conclude the officers did not have probable cause to search Shabazz's car on that basis.

"The probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." (*United States v. Ross* (1982) 456 U.S. 798, 808.) "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Illinois v. Gates* (1983) 462 U.S. 213, 243, fn. 13.)

Although Officer Peralta testified he smelled burnt marijuana, and he believed Shabazz could have been committing the crime of smoking marijuana in public or having an open marijuana container in his car, Shabazz told the officers he had been smoking cigarettes and showed them his pack of cigarettes. Officer Peralta conceded that he did not find marijuana in Shabazz's car. On these facts, we discern no probability or substantial chance of criminal activity. (See *Illinois v. Gates*, *supra*, 462 U.S. at p. 243, fn. 13.) The officers did not have probable cause to believe Shabazz had committed a crime related to marijuana possession or use, as the objective facts merely showed that he was lawfully smoking cigarettes. (See *United States v. Ross*, *supra*, 456 U.S. at p. 808.)

For the above reasons, we conclude the firearm was obtained in violation of Shabazz's Fourth Amendment rights.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court. That court is directed, upon the motion of Shabazz within 30 days of the finality of this opinion, to vacate the no contest plea, to reinstate the charges and allegations contained in the information as moved for by the prosecution, and proceed to trial or other appropriate disposition in accordance with the views expressed in this opinion. Should Shabazz not so move, or should he duly waive his right to so move, the trial court is directed to reinstate the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.

12