Filed 9/10/13  P. v. Esparza CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO VALDEZ ESPARZA et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B237321<br>(Super. Ct. No. MA050835-01 & 02)<br>(Los Angeles County) |

Francisco Valdez Esparza appeals a judgment following conviction of conspiracy to commit murder, conspiracy to commit kidnapping for purposes of robbery, conspiracy to possess heroin for sale, conspiracy to possess methamphetamine for sale, kidnapping, and assault with a firearm, with findings that a principal discharged a firearm and that the crimes were committed to benefit a criminal street gang.  (Pen. Code, §§ 182, subd. (a)(1), 187, subd. (a), 209, subd. (b)(1);[1] Health & Saf. Code, §§ 11351, 11378; §§ 207, subd. (a), 245, subd. (a)(2), 12022, subd. (a)(1), 12022.53, subds. (b), (c), (e), 186.22, subd. (b)(1)(C).)  We modify the judgment to strike the criminal street gang enhancements for count 1 and impose a minimum 15-year parole date as to that count; reduce the conviction for count 2 to conspiracy to commit simple kidnapping and remand for resentencing; modify the conviction for count 6 to attempted kidnapping; reverse and

---

[1] All statutory references are to the Penal Code unless stated otherwise.  References to sections 12021-12316 are to versions in effect prior to repeal effective January 1, 2012.

remand for resentencing regarding the gang enhancements for counts 3 and 4 and the modified conviction for count 6; and otherwise affirm.

Margarito Beltran Molina appeals a judgment following conviction of conspiracy to commit murder, conspiracy to commit kidnapping for purposes of robbery, conspiracy to possess heroin for sale, conspiracy to possess methamphetamine for sale, attempted murder, kidnapping, assault with a firearm, false imprisonment by violence, possession of methamphetamine for sale, possession of heroin for sale, making a criminal threat, possession of a firearm by a felon (two counts), and unlawful possession of ammunition, with findings that a principal discharged a firearm during commission of certain counts, the crimes were committed to benefit a criminal street gang, and service of two prior prison terms. (§§ 182, subd. (a)(1), 187, subd. (a), 209, subd. (b)(1); Health & Saf. Code, §§ 11351, 11378; §§ 664, 187, subd. (a), 207, subd. (a), 245, subd. (a)(2), 236, 422, 12021, subd. (a)(1), 12316, subd. (b)(1), 12022, subd. (a)(1), 12022.53, subds. (b), (c), (e), 186.22, subd. (b)(1)(C), 667.5, subd. (b).) We modify the judgment to strike the criminal street gang enhancements for count 1 and impose a minimum 15-year parole date as to that count; reduce the conviction for count 2 to conspiracy to commit simple kidnapping and remand for resentencing; modify the conviction for count 6 to attempted kidnapping; reverse and remand for resentencing regarding the gang enhancements for counts 3, 4, and 8 and the modified conviction for count 6; and otherwise affirm.

*FACTS AND PROCEDURAL HISTORY*

Russell Phillips, a self-described methamphetamine addict, obtained methamphetamine from Molina through drug transactions conducted at Molina's Quartz Hill apartment. In April 2010, Phillips was visiting Molina daily. In the Quartz Hill apartment, Molina kept firearms as well as notebooks documenting drug sales. Molina's bedroom also contained a monitor to receive video from a surveillance camera positioned outside the apartment. Molina informed Phillips that the camera would warn of the approach of law enforcement.

2

Esparza lived in a motor home parked in front of Molina's apartment. Phillips referred to Esparza as "the doorman" because he answered Molina's door for drug customers. If a customer arrived while Molina was busy with another customer, Esparza would advise the second customer to wait. At times, Esparza stayed in the second bedroom of Molina's apartment.

Phillips testified that Molina obtained heroin and methamphetamine from drug runners arriving from Mexico. Molina, Esparza, and the drug runners spoke in the Spanish language. Phillips also heard Molina sing of the Sinaloa region, an area of Mexico noted for the Sinaloa drug cartel.

In August or September 2010, Phillips moved into Molina's apartment and Molina began to "front" drugs to Phillips for resale. Phillips was soon "burned" when he did not receive an $8,000 payment from a heroin buyer.

Due to the $8,000 drug debt, Molina informed Phillips that he could not leave the apartment because he must be "accounted for." At times when Phillips left the apartment, Molina would search for Phillips and find him. Phillips worried that he was "digging [himself] a bigger hole."

On October 20, 2010, a man named "Luis" visited Molina, and they conversed in the Spanish language. Phillips was present but did not understand the conversation. When Molina left Luis alone with Phillips, Luis's demeanor suddenly became serious. Luis then stated: "I'm here to make you pay. And you are going to pay." Luis threatened to kill members of Phillips's family and stated: "The cartel are killing people over 50 bucks. Now, what makes you think that nothing is going to happen to you over [$]8,000?" Molina later joined the conversation and stated that it would be "his ass" if he did not pay his drug suppliers.

Phillips panicked and offered to drive to Northern California to retrieve gold coins from his family's home. Molina provided money to rent an automobile for the trip, and insisted that Esparza accompany Phillips. Phillips spent the money otherwise, however, because he did not intend to retrieve the coins.

3

Kyla Gorman, Phillips's girlfriend, drove Phillips and Esparza to an automobile rental agency.  Pursuant to a plan with Gorman, Phillips ran from Esparza and called Gorman.  Gorman then met Phillips and drove him to a friend's home to wait until she and Phillips could leave town together.

Phillips soon desired methamphetamine.  He telephoned longtime friend Jeremy Russell and asked for drugs.  Russell informed him that Molina was looking for him and offering a reward.  Phillips and Russell arranged to meet for a methamphetamine transaction.

"Melissa" and "Liz," friends of Phillips's girlfriend, drove Phillips to meet Russell.  At the meeting place, Phillips entered Russell's truck and noticed that Russell was nervously looking in his rearview mirror.  Phillips looked outside and saw Luis pointing a gun toward him.  A white-colored automobile then drove in front of Russell's truck, blocking its path.  Luis opened the truck door and ordered Phillips to leave the truck and enter the white-colored automobile.  Luis asked if Phillips thought he could "take off from us."

Phillips began walking toward the white automobile, and saw Esparza standing outside its rear door, ordering Phillips to "[g]et in."  Phillips decided to flee; he ran in front of and along Russell's truck and into the neighborhood.  As he ran, Phillips heard Luis fire the gun two or three times and sensed projectiles "zoom[] past" his head.

Phillips ran into the open garage of a home owned by Brian Frable, a prison correctional officer.  Phillips informed Frable that men were trying to kill him.  Frable retrieved his service revolver and stood at the front door.  A white automobile came to "a screeching halt" and three Hispanic men left the automobile and ran toward Frable's front door.  When confronted with Frable and his weapon, two of the men returned to the automobile.  Esparza, the third man, stated that Phillips "had stolen his truck."  When Frable responded that he did not care, Esparza returned to the automobile.  The men then drove in a reverse direction at a high rate of speed.

4

Phillips and Gorman later spoke with Los Angeles County sheriff's deputies. Phillips stated that Molina sold drugs from his apartment and that Esparza was his doorman. Gorman stated that Molina sold drugs for his brother Abel Beltran (Beltran), a drug runner for the Sinaloa drug cartel.

Sheriff's Deputy Richard Leon later observed Molina's apartment and Esparza's motor home, and saw Molina and Esparza. The physical descriptions given by Phillips of the two men were accurate. Leon also observed many individuals visiting Molina for short periods, activity consistent with narcotics sales. Leon noted a video camera installed outside the apartment with a view of the parking lot.

When Esparza drove away in the motor home, sheriff's deputies stopped and arrested him. During a search incident to Esparza's arrest, deputies found .40 grams of methamphetamine in his pocket. In a later interview, Esparza admitted knowing Phillips and being present when Luis shot at him. Esparza also gave Molina's apartment as his address. In a subsequent interview, Esparza admitted falsely informing Frable that Phillips had stolen his truck. Esparza also admitted handling a revolver that deputies later found in the laundry room of Molina's apartment building.

Sheriff's deputies subsequently searched Molina's apartment and found methamphetamine, heroin, drug paraphernalia, ammunition, and notebooks recording drug transactions. Inside the apartment building laundry room, deputies found two loaded firearms, a digital scale, and additional methamphetamine. Phillips and Russell identified a revolver found in the laundry room as the weapon used by Luis.

Los Angeles Sheriff's Deputy Tyrone Berry testified as an expert witness regarding the Sinaloa drug cartel. He opined that it is a powerful criminal organization that commits murder and kidnapping to further its narcotics trafficking. Berry stated that buyers who fail to pay their drug debts are threatened and sometimes killed by cartel members. He described criminal convictions obtained in Los Angeles County against Sinaloa drug cartel members who committed crimes in pursuit of drug debts. Given a

5

hypothetical question with factual circumstances similar to the present case, Berry opined that the crimes were committed for the benefit of the Sinaloa drug cartel.

The jury convicted Esparza of conspiracy to commit murder, conspiracy to commit kidnapping for purposes of robbery, conspiracy to possess heroin for sale, conspiracy to possess methamphetamine for sale, kidnapping, and assault with a firearm. (§§ 182, subd. (a)(1), 187, subd. (a), 209, subd. (b)(1); Health & Saf. Code, §§ 11351, 11378; §§ 207, subd. (a), 245, subd. (a)(2).)  It also found that a principal discharged a firearm during commission of certain counts, and the crimes were committed to benefit a criminal street gang.  (§§ 12022, subd. (a)(1), 12022.53, subds. (b), (c), (e), 186.22, subd. (b)(1)(C).)

The trial court sentenced Esparza to a prison term of 50 years to life, imposed various fines and fees, and awarded him 774 days of presentence custody credit. The court dismissed counts alleging attempted murder, false imprisonment, possession of methamphetamine for sale, and possession of heroin for sale, based upon the jury's failure to reach a verdict regarding each of those counts.

The jury convicted Molina of conspiracy to commit murder, conspiracy to commit kidnapping for purposes of robbery, conspiracy to possess heroin for sale, conspiracy to possess methamphetamine for sale, attempted murder, kidnapping, assault with a firearm, false imprisonment by violence, possession of methamphetamine for sale, possession of heroin for sale, making a criminal threat, possession of a firearm by a felon (two counts), and unlawful possession of ammunition.  (§§ 182, subd. (a)(1), 187, subd. (a), 209, subd. (b)(1); Health & Saf. Code, §§ 11351, 11378; §§ 664, 187, subd. (a), 207, subd. (a), 245, subd. (a)(2), 236, 422, 12021, subd. (a)(1), 12316, subd. (b)(1).)  It also found that a principal discharged a firearm during commission of certain counts and the crimes were committed to benefit a criminal street gang.  (§§ 12022, subd. (a)(1), 12022.53, subds. (b), (c), (e), 186.22, subd. (b)(1)(C).)  In a separate proceeding, Molina admitted suffering a prior felony conviction and serving two prior prison terms within the meaning of section 667.5, subdivision (b).

6

The trial court sentenced Molina to a prison term of 62 years to life, imposed various fines and fees, and awarded him 774 days of presentence custody credit.

Esparza appeals and contends that: 1) the trial court erred by denying his motion to suppress evidence (§ 1538.5); 2) insufficient evidence supports his conviction for conspiracy to commit murder and the criminal street gang enhancement; and 3) the trial court erred in calculating sentence regarding the enhancements.

Molina appeals and contends that: 1) insufficient evidence supports his conviction; 2) the prosecutor failed to disclose exculpatory evidence; 3) the prosecutor committed misconduct by arguing facts not in evidence and by disparaging defense counsel; 4) the prosecutor violated the *Aranda/Bruton* rule[2]; 5) the trial court erred by permitting Sheriff's Deputy Chris Bergo to opine that potential witnesses feared attending trial; 6) the trial court erred by permitting the prosecutor to impeach witness Gorman with prior inconsistent statements; 7) the trial court erred by permitting irrelevant evidence regarding his brother Beltran; 8) the jury instructions regarding conspiracy were inadequate; 9) the trial court erred by not instructing sua sponte concerning the number of conspiracies; 10) the trial court erred by not instructing regarding aggravated kidnapping (count 2); and 11) the trial court erred in calculating sentence regarding the enhancements.

Esparza and Molina each join the contentions raised by the other to the extent applicable. (Cal. Rules of Court, rule 8.200(a)(5).) Esparza and Molina also raise each of their arguments pursuant to the California and federal Constitutions.

*DISCUSSION*

*I.*

Esparza argues that the trial court erred by denying his motion to suppress evidence arising from the traffic stop of the motor home, i.e., the methamphetamine found in his pocket, his interview statements to sheriff's deputies, and evidence

---

[2] *People v. Aranda* (1965) 63 Cal.2d 518 and *Bruton v. United States* (1968) 391 U.S. 123.

discovered in Molina's apartment pursuant to a search warrant. He claims that the traffic stop was unlawful and without probable cause to arrest because Phillips's description of the suspects was too general to justify suspicion of any particular individual.

Prior to trial, Esparza moved to suppress the evidence found following his warrantless arrest. At an evidentiary hearing, Deputy Leon testified that he read a police report concerning the Phillips shooting and learned that the suspect was a chubby Hispanic man, five feet eight inches tall, and 45 to 50 years old. Phillips stated that the man, known as "Pancho," lived in a motor home parked in front of an apartment building near Avenue L10 and 50th Street in Quartz Hill. Phillips described Pancho as "the doorman" for Molina, who sold drugs from the Quartz Hill apartment. Leon drove to the only location in Quartz Hill that fit that description. He observed a man leave the motor home and enter an apartment. The man matched the physical description of Pancho given by Phillips. Leon also observed many people enter and leave the apartment within a few minutes, consistent with drug trafficking according to his law enforcement training and experience. (Leon had been a deputy sheriff for 13 years.) When Pancho drove away in the motor home, Leon instructed other deputies to conduct a traffic stop.

In ruling upon a motion to suppress, the trial court determines the facts, selects the rule of law, and applies the rule to determine whether the law has been violated. (*People v. Brendlin* (2008) 45 Cal.4th 262, 268.) We review the court's factual findings pursuant to a substantial evidence standard. (*People v. Tully* (2012) 54 Cal.4th 952, 979 [in a suppression hearing, trial court determines credibility of witnesses, weighs the evidence, and draws reasonable inferences therefrom].) We independently determine the legality of a search or arrest upon the established facts. (*Ibid.*)

Probable cause to arrest exists when the facts known to the arresting officer would persuade someone of reasonable caution that the person to be arrested has committed a crime. (*People v. Scott* (2011) 52 Cal.4th 452, 474.) Probable cause is a fluid concept involving an assessment of probabilities in particular circumstances. (*Ibid.*)

8

The trial court properly denied the motion to suppress evidence because Phillips's statements provided probable cause to arrest Esparza and search him incident to that arrest. Phillips provided a detailed description of Esparza (known to him as Pancho), Molina, and the Quartz Hill apartment building. He also stated that a motor home was parked in front of the apartment building. (*Humphrey v. Appellate Division* (2002) 29 Cal.4th 569, 575-576 [information given by crime victim presumptively reliable because information not secretly provided for pecuniary or other gain].) Phillips also stated that Esparza was the doorman for Molina who sold drugs from the apartment. Phillips described Molina as a 35-year-old balding Hispanic man and Leon confirmed that description. Leon also observed foot traffic in the apartment consistent with drug sales. Considered together, the factual circumstances establish probable cause to arrest. (*People v. Scott*, *supra*, 52 Cal.4th 452, 474 [rule of probable cause].)

*II.*

Esparza contends that insufficient evidence supports his conviction of conspiracy to commit murder (count 1), as well as the criminal street gang enhancement. (§§ 182, subd. (a), 186.22, subd. (b)(1).) He asserts that insufficient evidence exists of his specific intent to conspire or his specific intent to kill Phillips. (*People v. Swain* (1996) 12 Cal.4th 593, 607 [conspiracy to commit murder requires a finding of specific intent to kill].) To support his contention, Esparza points out that the jury could not agree upon the count of attempted murder. He also asserts that the evidence is insufficient to establish that he committed any crime to benefit the Sinaloa drug cartel or that he had the specific intent to "promote, further, or assist" cartel members in any criminal conduct. (§ 186.22, subd. (b)(1).)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution

9

primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

Conspiracy requires two or more persons agreeing to commit a crime, along with the commission of an overt act by one person in furtherance of the conspiracy. (*People v. Homick* (2012) 55 Cal.4th 816, 870.) Conspiracy requires the intent to agree, and the intent to commit the underlying substantive offense. (*Ibid.*) An agreement among alleged conspirators is often established by circumstantial evidence. (*Ibid.*) Thus, the existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. (*Ibid.*)

Sufficient evidence supports a conspiracy to commit murder. Esparza was the doorman for the drug transactions conducted in Molina's apartment. At times Esparza stayed in the apartment and he also used drugs there. Molina ordered Esparza to accompany Phillips to Northern California to collect on Phillips's drug debt. After Phillips fled from Esparza at the automobile rental agency, Molina offered "a $10,000 bounty or a hit or murder for hire" on Phillips. Luis then persuaded Russell to lure Phillips out of hiding. When Phillips met Russell to obtain methamphetamine, Luis and Esparza surprised him. At gunpoint, Luis ordered Phillips to enter the automobile and Esparza held the door open and stated, "Get in." As Phillips ran into the neighborhood, Luis fired several gunshots that passed by Phillips's head. During their neighborhood pursuit of Phillips, Esparza ran to Frable's front door and falsely informed him that Phillips had stolen his truck. This evidence and all reasonable inferences therefrom establish that Esparza had the specific intent to conspire to commit murder and that he had the specific intent to kill Phillips.

10

Although the jury could not agree upon the count of attempted murder, our review of the conspiracy to commit murder conviction is independent of the attempted murder count. (*People v. Lewis* (2001) 25 Cal.4th 610, 656 [well-settled rule that inherently inconsistent verdicts are allowed to stand].) Moreover, an inconsistent verdict "may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*Ibid.*)

Sufficient evidence and reasonable inferences therefrom also support the criminal street gang allegation based upon the testimony of stipulated expert Deputy Berry. Other evidence established that Phillips owed money to Molina for drugs supplied by the Sinaloa drug cartel; Luis warned Phillips that he owed a debt to the cartel and Phillips believed it was the Sinaloa drug cartel that fronted his drugs. Berry opined that committing violent crimes against persons owing narcotics debts benefits the Sinaloa drug cartel because it "sends a message to future buyers" regarding payment. Berry testified: "This is how this organization operates. This is how they sell their narcotics, through fear and intimidation. . . . They commit murders to enhance their drug trade [and] increase their territory." The gang allegation thus is supported by sufficient evidence. (*People v. Albillar*, *supra*, 51 Cal.4th 47, 63 ["Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22 (b)(1)"].)

### III.

Molina contends insufficient evidence supports his conviction of conspiracy to commit murder, conspiracy to commit kidnapping *for purposes of robbery*,[3] attempted murder, kidnapping, assault with a firearm, false imprisonment, making a criminal threat, and the criminal street gang allegation.

Among other things, Molina specifically argues there is insufficient evidence of: his participation in the agreement to lure Phillips out of hiding so that he

---

[3] We need not resolve this contention in view of our discussion at *XIII.*, *post.*

11

could be killed; his aiding and abetting a kidnapping; movement of Phillips the requisite distance to establish kidnapping; express or implied force concerning false imprisonment; his aiding and abetting Luis in making a criminal threat; and his involvement with the Sinaloa drug cartel.

Except for the kidnapping conviction (count 6), sufficient evidence and all reasonable inferences therefrom support Molina's convictions and the criminal street gang allegation. (*People v. Streeter*, *supra*, 54 Cal.4th 205, 241 [standard of review]; *People v. Albillar*, *supra*, 51 Cal.4th 47, 60 [same].)

Molina used Luis to threaten Phillips, and Esparza to supervise Phillips to prevent him from leaving town without paying his drug debt. Luis used Molina's firearm to shoot at Phillips and Molina recovered possession of the firearm thereafter. Molina also offered "a $10,000 bounty or a hit or murder for hire" on Phillips. This evidence and reasonable inferences therefrom establish that Molina was part of an agreement to kidnap and kill Phillips although he was not personally present during execution of the plan.

Sufficient evidence also supports Molina's conviction of attempted murder and assault with a firearm. Luis fired his firearm several times at Phillips who sensed the bullets passing by his head, believing in error that he had been wounded. The attempted murder was a reasonable and probable consequence of the conspiracy to commit murder. As a conspirator to kidnap and kill Phillips, Molina also was criminally responsible for assault with a firearm although he did not personally use the weapon. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1118.)

There is also sufficient evidence of implied force to support the false imprisonment conviction. Molina informed Phillips that he was to be "accounted for," and that he could not leave the apartment. When he did leave the apartment, Molina searched for Phillips and found him. Molina also instructed Esparza to accompany Phillips to the automobile rental agency and to Northern California to retrieve the gold coins.

There is sufficient evidence that Molina aided and abetted Luis's criminal threat. After conversing with Luis in the Spanish language, Molina left Luis with Phillips in the bedroom of Molina's apartment. Luis was aware of the amount of Phillips's drug debt when he spoke to him. Following the threat, Molina returned to the bedroom and stated that it would be "his ass" if he did not pay his drug suppliers.

We have discussed the sufficiency of evidence regarding the criminal street gang allegation. (*II.*, *ante.*) The evidence was received without objection and is sufficient to support the allegation. Molina also argues that he did not receive the effective assistance of counsel because his attorney failed to object to evidence regarding the Sinaloa cartel. Evidence of the cartel was relevant to the criminal street gang allegation. Phillips testified that drug runners from Mexico delivered drugs to Molina; when Luis threatened Phillips, Luis mentioned the cartel; and Gorman informed Sheriff's Deputy Teresa Steen that Molina and his brother were drug runners for the Sinaloa drug cartel.

There is insufficient evidence, however, to support the jury's conclusion that Phillips was moved "a substantial distance" for kidnapping (count 6). (CALCRIM No. 1215.) Although Luis forced Phillips at gunpoint to leave the relative safety of a truck and walk toward an automobile in which Esparza and another man waited, Phillips walked only *five feet* before he broke away from Luis. The totality of circumstances does not support the inference that the distance Phillips was moved was "substantial in character." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1319; *People v. Martinez* (1999) 20 Cal.4th 225, 237 ["[C]ontextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance"] .) Accordingly, we reduce the kidnapping conviction to the lesser included offense of attempted kidnapping. (*Martinez*, at p. 241; *People v. Howard* (2002) 100 Cal.App.4th 94, 99 ["[A]n appellate court may reduce a conviction to a lesser included offense if the evidence supports the lesser included offense but not the charged offense"].)

13

Molina was connected to the crime of attempted kidnapping by his conspiratorial association with Luis and Esparza, his motive to collect a drug debt, and Luis's use of Molina's firearm. Sufficient evidence and all reasonable inferences therefrom support this lesser included offense.

*IV.*

Molina asserts that the prosecution did not disclose exculpatory evidence and did not correct misleading testimony regarding the discovery of passport photographs in the possession of Beltran. (*Brady v. Maryland* (1963) 373 U.S. 83.)

At trial, the prosecutor presented evidence of passport photographs of Angel Martinez found inside Beltran's residence. Prior to trial, Phillips and Russell identified the photographs as resembling Luis, the man who threatened and shot at Phillips. At trial, the prosecutor and defense counsel learned that Martinez was imprisoned at the time of the Phillips shooting. During summation, the prosecutor then stated that Martinez was not "Luis," the man who threatened and shot at Phillips.

The prosecutor did not commit *Brady* error because at trial he provided Molina with information that Angel Martinez may have been imprisoned at the time of the crimes committed against Phillips. (*People v. Verdugo* (2010) 50 Cal.4th 263, 281.) Moreover, the prosecutor did not knowingly present false testimony or misleading evidence because initial records were unclear whether Martinez was on parole at the time of the present crimes. In any event, any error is harmless beyond a reasonable doubt because evidence at trial established that Martinez was imprisoned at the time of the shooting. The prosecutor stated during summation that the prosecution theory did not involve Martinez. Moreover, the defense benefitted from evidence that Phillips and Russell incorrectly identified Martinez in a photographic lineup as resembling the shooter.

*V.*

Molina contends that the prosecutor committed misconduct during summation by asserting that Gorman's trial testimony changed after she saw Molina on a

14

jail bus and after Molina's attorney spoke with Gorman during Gorman's jail confinement on drug charges. The prosecutor stated: "What do you think has been going on on that bus ride by the defendants in talking range? She has been threatened. Then all of a sudden [Molina's] defense attorney talks with her in private, which is not a good idea, and then she comes into court and [changes her testimony]. . . . [T]he defense's only witness [testified] after they were prepped by the defense attorney and after they were on the bus ride with [Molina]. . . . It's just a smoke screen." Molina asserts that this summation argued facts not in evidence (that Molina threatened Gorman on the bus) and disparaged defense counsel by implying that he fabricated a defense.

The standards of review of prosecutorial misconduct are well settled. (*People v. Williams* (2013) 56 Cal.4th 630, 671.) A prosecutor who uses deceptive or reprehensible methods to persuade commits misconduct. (*Ibid.*) If the prosecutor's actions infect the trial with such unfairness as to deny due process, the federal Constitution demands reversal. (*Ibid.*) Under California law, a prosecutor who uses such methods commits misconduct even if his actions do not result in a fundamentally unfair trial. (*Ibid.*)

To preserve a claim of misconduct, a defendant must make a timely objection and request an admonition. (*People v. Williams*, *supra*, 56 Cal.4th 630, 671.) Defendant's claim is preserved, however, if an admonition would not have cured the harm. (*Ibid.*) When a misconduct claim challenges comments made by the prosecutor, the pertinent inquiry is whether there is a reasonable likelihood the jury construed or applied the remarks in an objectionable manner. (*Ibid.*)

Molina has forfeited his claim by failing to object and request an admonition. (*People v. Williams*, *supra*, 56 Cal.4th 630, 671.) Moreover, he has not shown that an objection would have been futile. (*Id.* at p. 672 [defendant's claims forfeited because he did not establish "how objecting would have been futile under the circumstances"].) The challenged remarks were brief and the prosecutor reminded the jury that it could not consider "what [counsel] say" and that "[it is] supposed to consider

15

the evidence."  In closing argument, Molina's attorney explained his jailhouse conversation with Gorman and stated that he did not coach her.  Given the lengthy presentation of evidence at trial and the whole of the prosecutor's summation, there is no reasonable likelihood the jury applied the challenged remarks in an improper manner.

*VI.*

Molina argues that his constitutional rights pursuant to *People v. Aranda, supra,* 63 Cal.2d 518 and *Bruton v. United States*, *supra*, 391 U.S. 123 were violated when Deputy Bergo testified that Esparza admitted in his post-arrest interview that "they were going to take [Phillips] back *to Molina* to pay the debt." (*Ibid.* [a nontestifying codefendant's extrajudicial statement that incriminates himself and another defendant is inadmissible].)

Prior to trial, the prosecutor informed the court that he had agreed with defense counsel that the prosecution would not present evidence of Esparza's interview statements that implicated Molina.  The prosecutor added that he had so instructed his law enforcement witnesses regarding their trial testimony.  During cross-examination by Esparza, Deputy Bergo testified that Esparza informed him that the gunman was "going to bring [Phillips] back to the apartment."  After a few questions regarding "the apartment," Bergo testified that Esparza stated that "they were going to take [Phillips] back *to Molina* to pay the debt."  Molina did not object nor did he request that the court strike Bergo's answer.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1007 [forfeiture of asserted *Aranda/Bruton* error by failure to object].)

Forfeiture aside, Bergo's testimony regarding Esparza's statement did not violate the *Aranda/Bruton* rule because its incriminatory effect depended upon other evidence, i.e., that Phillips owed a debt to Molina who demanded that Phillips pay or suffer physical harm.  (*People v. Homick*, *supra*, 55 Cal.4th 816, 874-875 [*Aranda/Bruton* rule applies only to facially incriminating statements; rule does not apply if incriminatory effect depends upon link to other evidence].)

16

*Asserted Evidentiary Errors*

*VII. & VIII. & IX.*

We briefly consider asserted evidentiary errors raised by Esparza and Molina. First, they argue that the trial court erred by permitting Deputy Bergo to testify that three witnesses who did not testify at trial ("Liz," "Melissa," and "Sylvia Reyes," a tenant in Molina's apartment building) were afraid to attend trial. "Regarding gang cases," Bergo stated: "It is very difficult to find witnesses. A lot of them go into hiding [and] don't want to appear in court . . . . Nobody wants to step forward and testify because they are worried about retaliation." Molina has forfeited this argument because he did not object in the trial court on the grounds of relevance or violation of due process. (Evid. Code, § 353, subd. (a) [objection must be specific and timely]; *People v. Houston* (2012) 54 Cal.4th 1186, 1213; *People v. Boyette* (2002) 29 Cal.4th 381, 424 ["Failure to object rarely constitutes constitutionally ineffective legal representation"].) Forfeiture aside, Bergo's statements were brief and defendants suffered little prejudice compared with the totality of the evidence.

Second, Esparza and Molina contend that the trial court erred by permitting the prosecutor to ask Gorman whether she informed sheriff's deputies that Russell was involved in narcotics sales with Molina, and that Molina and Beltran worked for the Sinaloa drug cartel. The trial court did not err. At trial, Gorman testified and initially denied knowing Molina and Esparza or making the statement concerning their involvement with the drug cartel. Later, Deputy Steen testified that Gorman informed her that Phillips worked for Molina selling drugs and that Molina and Beltran were drug runners for the Sinaloa drug cartel. Gorman's statements to Steen are prior inconsistent statements admissible pursuant to Evidence Code section 1235. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220 [test for admitting witness's prior statement is inconsistency in effect].) Moreover, the prosecutor's question to Gorman could not have prejudiced defendants because the court instructed with CALCRIM No. 222, admonishing that questions posed by the attorneys are not evidence and to be considered

17

only "to understand the witnesses' answers." In any event, Gorman's statement was cumulative to the testimony of Phillips and Russell regarding Molina's connection to the Sinaloa drug cartel.

Third, Molina contends that the trial court abused its discretion pursuant to Evidence Code section 352 by permitting irrelevant evidence regarding Beltran, i.e., Beltran possessed passports in the name of "Angel Martinez"; Beltran was arrested for possession of methamphetamine for sale; and when arrested, he possessed a note with Molina's jail booking number.

It is not reasonably probable that Molina would have obtained a more favorable result absent this evidence. Phillips, Gorman, and Russell testified that Molina was involved in the sale of methamphetamine. In searching Molina's apartment, deputies found methamphetamine, heroin, pay/owe sheets, and firearms. This evidence established overwhelmingly that Molina possessed drugs for sale. Molina cannot be prejudiced by evidence that his brother also possessed and sold drugs. (*People v. Pearson* (2013) 56 Cal.4th 393, 446 [test of prejudicial error concerning erroneous admission of evidence].)

*X.*

We reject defendants' arguments of cumulative error. Any asserted errors were forfeited, lack merit, or are harmless under any standard of review. "[A] defendant is entitled to a fair trial, not a perfect one." (*People v. Anzalone* (2013) 56 Cal.4th 545, 556.)

*Asserted Instructional Error*

*XI.*

Esparza and Molina argue that the jury instructions regarding conspiracy allowed the jury to convict on four conspiracy charges (counts 1, 2, 3, and 4) based upon proof of agreement to commit only one target offense. They point out that the trial court instructed using the words "and/or," as opposed to instructing separately for each count of conspiracy and respective target offense. Thus, the court instructed that the prosecution

18

was required to prove that "[a] defendant intended to agree and did agree with one or more of the other defendants or coparticipants to commit the crimes of Murder, Kidnapping, Possession for Sale of Heroin, *and/or* Possession for Sale of Methamphetamine." (Italics added.) Esparza and Molina contend that this instructional error relieved the prosecution of proving every element of each count of conspiracy beyond a reasonable doubt.

We reject defendants' strained interpretation of the instructions. The trial court instructed that Esparza and Molina were charged with four separate counts of conspiracy. The jury received a separate verdict form for each conspiracy count and specific target offense, and was instructed to "decide each charge for each defendant separately." "We do not find it reasonably likely the jury interpreted the instructions in the manner defendant imagines." (*People v. Ervine* (2009) 47 Cal.4th 745, 787 [rejecting argument that instructions allowed conviction of three counts of attempted murder based on finding of specific intent to kill only one victim].)

*XII.*

Esparza and Molina argue that the trial court erred by not instructing the jury sua sponte to determine whether there were four separate conspiracies or two – one conspiracy to kidnap and kill Phillips, and one conspiracy to sell drugs. They assert that the error deprived them of their constitutional rights to have a jury determine every element of each criminal offense beyond a reasonable doubt.

Judicial decisions are divided whether a trial court has a sua sponte duty to specifically instruct regarding a single all-encompassing conspiracy versus multiple conspiracies. (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1668-1669 [duty to instruct where evidence supports alternative findings]; CALJIC No. 17.05.) More recent decisions reason that it is the agreement that the conspiracy statute punishes; one agreement cannot be considered to be several agreements because it contemplates commission of several target offenses. (*People v. Jasso* (2006) 142 Cal.App.4th 1213, 1220.) Older decisions conclude that whether a single conspiracy or multiple

19

conspiracies exist is not a factual question to be decided by the jury. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1133 and decisions cited therein.)

For several reasons, we reject defendants' contention. First, there is insufficient evidence to support an alternative finding of two conspiracies. The evidence does not support the conclusion that there were two general agreements to encompass all the criminal acts committed. Virtually, any two criminal offenses committed by a person or persons may be viewed in the abstract to be within a single stated objective when the objective is stated broadly. In determining the number of agreements, we must consider the time frame, the nature of the crimes, the motives, and location of the crimes. (*People v. Jasso*, *supra*, 142 Cal.App.4th 1213, 1221.)

Second, the principle conveyed by an instruction regarding a single conspiracy or multiple conspiracies (CALJIC No. 17.05) was conveyed by the instructions given and the verdict forms supplied. The trial court instructed that the prosecution must prove that "[a] defendant intended to agree and did agree with one or more of the other defendants and/or coparticipants to intentionally and unlawfully kill." The jury was asked separately to determine an agreement on each of the remaining three conspiracy charges. It then completed separate verdict forms for each of the four conspiracy charges. The overt acts supporting the four conspiracies were factually distinct. Moreover, the court instructed the jury to "decide each charge for each defendant separately." Any error is harmless under any standard of review.

*XIII.*

Esparza and Molina point out that the trial court erred by instructing regarding simple kidnapping and not aggravated kidnapping as charged in count 2, conspiracy to commit kidnapping *for purposes of robbery*. The Attorney General concedes. We note that the jury rejected the charge of aggravated kidnapping in count 6, and convicted Esparza and Molina of the lesser offense of simple kidnapping. For that reason and as requested by the Attorney General, we reduce the conviction on count 2 to conspiracy to commit simple kidnapping. (*People v. Edwards* (1985) 39 Cal.3d 107, 118

20

["Where the prejudicial error goes only to the degree of the offense for which the defendant was convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial"].)

*Sentencing Contentions*

*XIV.*

Esparza and Molina raise several sentencing contentions regarding the criminal street gang enhancements. The Attorney General concedes.

First, Esparza and Molina correctly assert that the trial court may not impose a term gang enhancement where the underlying felony already carries a life sentence (count 1 [conspiracy to commit murder] and count 2 [conspiracy to commit kidnapping]). When gang allegations are found true and the underlying felony already carries a life sentence, "section 186.22, subdivision (b)(5) . . . applies and imposes a minimum term of 15 years before the defendant may be considered for parole." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1004; *id.* at p. 1011.) We strike the terms imposed for the gang enhancement for count 1 and order that a 15-year minimum parole date be imposed.

Second, Esparza and Molina point out that the trial court erred by imposing a 20-month term (one-third the prescribed five-year term) as a gang enhancement for count 3 (conspiracy to possess heroin for sale), count 4 (conspiracy to possess methamphetamine for sale), and count 8 (false imprisonment - Molina only), because the crimes are not serious felonies pursuant to section 1192.7, subdivision (c). The applicable punishment is set forth in section 186.22, subdivision (b)(1)(A), which sets forth punishment as two, three, or four years. We remand for resentencing regarding the gang enhancements and counts 3, 4, and 8 (Molina only), pursuant to section 186.22, subdivision (b)(1)(A).

We modify the judgment for each defendant to strike the criminal street gang enhancements for count 1 and impose a minimum 15-year parole date as to that count; reduce the conviction for count 2 to conspiracy to commit simple kidnapping and

21

remand for resentencing; modify the conviction for count 6 to attempted kidnapping; reverse and remand for resentencing regarding the gang enhancements for counts 3, 4, and 8 (Molina only) and the modified conviction for count 6; and otherwise affirm. The trial court shall prepare an amended abstract of judgment that accurately reflects the oral pronouncement of sentence and as modified herein and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

Carol Koppel, Judge

Superior Court County of Los Angeles

_____

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant Margarito Beltran Molina.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant Francisco Valdez Esparza.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.