Filed 9/9/16  P. v. Taylor CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRANDON TAYLOR,<br><br>    Defendant and Appellant. | B270475<br><br>(Los Angeles County<br>Super. Ct. No. KA110932) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wade Olson, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

Defendant Brandon Taylor appeals following his nolo contendere plea to six counts including possession of a firearm, possession of a controlled substance, and destruction of evidence. Before he pleaded nolo contendere, Taylor moved to suppress evidence of contraband in his possession at the time of his arrest. The trial court denied the motion.

After review of the record, Taylor's court-appointed counsel filed an opening brief asking this court to review the record independently pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We have reviewed the record and see no arguable error that would result in a determination more favorable to Taylor. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Stop and arrest of defendant

Officer Craig Voors of the Glendora Police Department testified about relevant events at the preliminary hearing and the hearing on Taylor's motion to suppress. Officer Voors was on patrol when he saw Taylor walking down the street in the 1000 block of South Glendora Avenue at about 3:50 p.m. on October 12, 2015. He pulled over and got out of his car to speak with Taylor. The People and the defense jointly offered into evidence a dash-cam video of the encounter, as well as a separate audio recording from the recording device Officer Voors was wearing at the time. The prosecution and defense each proffered separate written transcripts of the audio exhibit, which are nearly identical.[1]

The video and Officer Voors's testimony show that Taylor was carrying two duffle bags, and he was wearing a small backpack. After Officer Voors got out of his car, he began asking Taylor questions, first asking if he was "coming out of the hills" nearby, if everything was all right, and, "Do you have any ID on you? Where are you headed?" The People's transcript notes that approximately 37 seconds into the conversation, Taylor

---

[1] The Court has viewed the dash-cam video, listened to the separate audio recording, and read the transcripts submitted by both parties.

2

handed Officer Voors his identification.[2]  The video indicates that Taylor handed Officer Voors his entire wallet, unfolded, presumably to expose his identification card.  Officer Voors testified that he did not give Taylor's identification back to him during the encounter.

Officer Voors asked Taylor where he lived.  Taylor explained that he lived in Ontario, and that he had taken a Greyhound bus out to visit a woman, but they had gotten into an argument and parted ways.  Officer Voors asked Taylor if he had money to get back home, and Taylor replied that he did.  Officer Voors asked whether Taylor had ever been arrested, and Taylor replied that he was due in court the following Thursday on a charge for driving under the influence.

Two minutes and 24 seconds into the conversation, Officer Voors relayed Taylor's information to dispatch.  He then asked Taylor if he had been arrested for anything else, and Taylor replied that he had been arrested for possession of marijuana in the past. Officer Voors asked, "Do you have anything illegal on you at all?  Would it be alright [*sic*] if I checked?"  Taylor responded, "Yeah."

Officer Voors asked Taylor to take off his backpack, and Taylor complied, handing Officer Voors the backpack.  Officer Voors set it aside, and asked Taylor to interlace his fingers behind his back.  At this point in the video, a second police officer, whom Officer Voors later identified as Corporal Tibbetts, stepped into view.  Officer Voors later testified that no other officers were on the scene until after Taylor had been arrested.  Officer Voors asked Taylor again, "You said nothing illegal on you, right?" Taylor replied, "No, sir."  Officer Voors asked, "Cool if I check real quick?"  Taylor answered, "Yeah."

As Officer Voors was searching Taylor's person, he received a call from dispatch that Taylor had an outstanding warrant.  When he finished searching Taylor, Officer Voors asked Taylor to sit down on the curb with his legs straight out in front of him,

---

[2] Neither the video nor audio recording include time notations.  The prosecution's transcript of the audio recording includes periodic time notations, and defense counsel later agreed that they are roughly accurate.  We therefore rely on these time notations.

3

crossed at the ankles. Corporal Tibbetts moved close to where Taylor sat, and remained standing. Officer Voors then opened Taylor's backpack, looked inside, took out a pair of sandals, looked inside again, and set the backpack down. Officer Voors later testified that there was a loaded, operable, six-shot .32-caliber revolver in the backpack.

He approached Taylor from behind and said, "Put your hands behind your back for me. You just got a small warrant for the DUI, man." Taylor quickly bent his legs and pulled his hands forward and out of Officer Voors's grasp, as if he were going to get up from the curb. Officer Voors and Corporal Tibbetts pushed Taylor to the ground and handcuffed him. The officers then took Taylor out of view of the video. Less than eight minutes elapsed between the time Officer Voors approached Taylor and when Taylor was placed in the police car. Officer Voors later testified that he arrested Taylor on the warrant and for possession of a loaded firearm.

Officer Voors also testified at the preliminary hearing about events in the police car and at the police station; the following summary is taken from that testimony. On the way back to the police station in the patrol car, Officer Voors saw Taylor reaching around in his pants. Officer Voors asked Taylor what he was reaching for, and Tayor replied that he was reaching for ecstasy. Once they arrived at the police station, Corporal Tibbetts read Taylor his rights. Taylor indicated that he had ecstasy in the front of his pants. Taylor was uncooperative and refused to remove some of his clothing for a search; therefore officers handcuffed him and removed his clothing. They found in Taylor's underwear "several individual baggies containing a powdery substance and also compressed powdery substance that looked like pills." Officer Voors then realized that Taylor was chewing on something, and when officers tried to get him to spit it out, it appeared that Taylor swallowed before spitting out a clear plastic baggie. Taylor told Officer Voors that he had swallowed ecstasy.

Seven baggies were recovered from Taylor's underwear. The parties stipulated that one baggie was found to contain 12.2425 grams of solid substance that contained heroin, two baggies were found to contain no controlled substances, and two were not

4

tested. Officer Voors testified that based on the quantity of the substance containing heroin, it was his opinion that it was likely intended for sale.

The People charged Taylor with the following: Count 1, possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)) (a felony); count 2, possession of a controlled substance for sale (Health & Saf. Code, § 11351) (a felony); count 3, possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) (a felony); count 4, possession of ammunition (Pen. Code, § 30305, subd. (a)(1)) (a felony); count 5, destroying evidence (Pen. Code, § 135) (a misdemeanor); and count 6, resisting, delaying, or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)) (a misdemeanor). The People also alleged that Taylor had several felony convictions dating back to 2000.

## B. Taylor's motion to suppress evidence

Taylor moved pursuant to Penal Code section 1538.5[3] to suppress "all evidence seized from the backpack, from defendant's person, seized during the arrest of the defendant, all observations made by law enforcement after the arrest, and any and all statements made by the defendant." (See § 1538.5, subd. (a)(1)(A) ["A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: (A) The search or seizure without a warrant was unreasonable."].)

Taylor argued that although the encounter with Officer Voors started consensually, "Officer Voors almost immediately obtain[ed] Mr. Taylor's identification" and did not give it back. Officer Voors was "basically interrogating Taylor as to the circumstances that brought him to Glendora and not giving him back his wallet with his identification." Corporal Tibbetts arrived and was "clearly acting as back up for an encounter that smacks of starting out as a consensual encounter but very quickly turned into a detention as the officer's suspicions of unlawful activity persisted without apparent reason." Because Taylor was illegally detained when he gave Officer Voors consent to search, he argued, his consent was not voluntary. Taylor argued that all evidence should

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

therefore be suppressed because the search violated his rights under California law and the Fourth and Fourteenth Amendments to the United States Constitution.

The People opposed the motion, arguing that the encounter was consensual and Taylor "was free to terminate the encounter at any point up to his arrest, therefore no seizure took place until his arrest." The prosecution argued that the totality of the circumstances, including the brevity of the encounter and the conversational tone, indicated the encounter was consensual. The prosecution cited several California cases hold that obtaining a person's identification does not convert a consensual encounter into a detention. They also argued that Taylor clearly consented to the search through words and conduct. In addition, the People argued that all the evidence inevitably would have been discovered despite any police misconduct, because a lawful arrest on Taylor's outstanding warrant would have uncovered the contraband.

At the hearing on Taylor's motion, the parties stipulated that "the search and seizure and any evidence seized thereafter was not subject to a search warrant or arrest warrant." Officer Voors was called as a witness, and he testified to the facts summarized above. The court accepted the video recording, audio recording, and transcripts into evidence. Defense counsel argued that Officer Voors's questions were more in the nature of an interrogation than a conversation, that Officer Voors took Taylor's wallet and did not give it back, and that under the totality of the circumstances it was not reasonable to hold that a person would feel free to leave.

The court observed that Taylor never asked Officer Voors to leave him alone, because he did not say anything along the lines of, "Hey man, just let me go. Just let me go on my way," or "Can I have my I.D. back? You guys are hassling me." Defense counsel objected that this placed the burden on a defendant to protest, but the court did not agree. The court noted that the conversation between Officer Voors and Taylor included comments about the weather and Taylor's explanation of parting ways with a woman, and said, "Nothing in those conversations, nothing about the activity of the officer that the court observed, did it say that it rose to the level that his responses of cooperation were not voluntary, but were submission to authority."

6

The court also noted, "The search of his personal belongings did not take place until after the officer was advised by dispatch that he had a $40,000 traffic warrant." The court found that the backpack search was therefore incident to Taylor's arrest. The "timing of . . . dispatch saying he has a warrant kind of seals the deal" because when Officer Voors asked Taylor to sit on the curb with his ankles crossed, the nature of the encounter had changed because of the arrest warrant. The court denied the motion.

Taylor pleaded nolo contendere to all six counts. He also admitted his prior convictions. The court sentenced him to prison for two years pursuant to his plea agreement and imposed various fines and restitution.

Taylor filed a notice of appeal referencing the trial court's denial of his motion to suppress. Taylor has not submitted a certificate of probable cause for his appeal.

Taylor's appointed counsel on appeal filed a brief requesting that we independently review the record for error. (*Wende, supra,* 25 Cal.3d at p. 441.) We directed counsel to send the record and a copy of the brief to Taylor, and notified him of his right to respond within 30 days. Taylor filed a letter raising several questions relating to the initial stop, the search at the police station, and the evidence discussed at the preliminary hearing.

## SCOPE AND STANDARD OF REVIEW

"Penal Code section 1237.5 provides that a defendant may not appeal 'from a judgment of conviction upon a plea of guilty or nolo contendere' unless the defendant has applied to the trial court for, and the trial court has executed and filed, 'a certificate of probable cause for such appeal.' [Citation.] 'Despite this broad language, we have held that two types of issues may be raised on appeal following a guilty or nolo plea without the need for a certificate: issues relating to the validity of a search and seizure, for which an appeal is provided under [Penal Code] section 1538.5, subdivision (m), and issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed.' [Citation.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 766.) Section 1538.5, subdivision (m) states in part, "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction

in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty." (See also Cal. Rules of Court, rule 8.304(b)(4)(A) [following a no contest plea, no certificate of probable cause is required to challenge the denial of a motion to suppress evidence under section 1538.5].)

Taylor has not presented a certificate of probable cause, and specified in his notice of appeal that he intended to challenge the ruling on his section 1538.5 motion. We therefore consider issues relating only to the validity of the search and seizure of evidence in this case. To the extent Taylor raises other challenges to his convictions, those challenges are not appealable under section 1237.5.[4]

"A defendant may move to suppress evidence under section 1538.5 on grounds that a search without a warrant was unreasonable. A warrantless search is presumptively unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. (*People v. Redd* (2010) 48 Cal.4th 691, 719, [108 Cal.Rptr.3d 192, 229 P.3d 101].) In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence. (*Ibid*.) And in determining whether, on the facts so found, the search was reasonable for purposes of the Fourth Amendment to the United States Constitution, we exercise our independent judgment. (*Redd*, at p. 719.)" (*People v. Simon* (2016) 1 Cal.5th 98, 120.)

## DISCUSSION

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." (U.S. Const., 4th

---

[4] In his letter to the court, Taylor presents the following challenges not related to the validity of the search and seizure: whose fingerprints were on the weapon, whether the amount of heroin recovered was sufficient to sustain a conviction relating to intent to sell, whether *Miranda* rights were properly given at the police station, and whether the dash cam video properly conveyed the moment when Officer Voors first saw Taylor. Taylor also raises issues relating to an interview after Taylor was at the police station, which was not presented to the trial court and is not included in the record on appeal. None of these issues relate to the search and seizure, so we will not consider them pursuant to section 1237.5. In addition, Taylor asked that we admit into evidence the video of his interview at the police station. As the trial court did not consider this evidence and it is not relevant to the appealable issues here, Taylor's request is denied.

Amend.) "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."' [Citation.]" (*Riley v. California* (2014) ___U.S.___, 134 S.Ct. 2473, 2482 [189 L.Ed.2d 430].) "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." (*Ibid*.)

Two exceptions are potentially relevant here: Taylor's consent to the search, and search incident to a valid arrest. We will consider both exceptions.

### A.     Consent to search

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

Taylor argues in his letter to this Court that his encounter with Officer Voors "starts off as a consensual encounter. But it turns into a dention [*sic*] with the kind of questions [Officer Voors asked], in conju[n]ction with taking the identification." He asserts that a consensual encounter "becomes a detention when a[n] officer recieves [*sic*] a[n] I.D., bus ticket, plane ticket, etc." Taylor also contends that "the officer[']s inquiry changes a consensual encounter into a detention," and here the questioning had "more of the indicia of somebody who's being detained because there's a suspicion that there's criminal activity afoot. That's the hallmark of a detention, not the hallmark of a consensual encounter." He concludes that the exclusionary rule bars the admission of any evidence arising from the unlawful detention. These arguments echo Taylor's motion to suppress evidence in the trial court, in which he also argued that he was detained at the time he gave consent to search, and therefore his consent was not voluntarily given.

"It is 'well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.' [Citations.]" (*People v. Woods* (1999) 21 Cal.4th 668, 674.) "Consent that is the product of an illegal detention is not voluntary and is ineffective to justify a search

or seizure." (*People v. Zamudio* (2008) 43 Cal.4th 327, 341 (*Zamudio*).) "When the prosecution asserts that a defendant has consented to a search, the prosecution bears the additional burden of proving by a preponderance of the evidence 'that the defendant's manifestation of consent was the product of his [or her] free will and not a mere submission to an express or implied assertion of authority.' [Citation.]" (*People v. Espino* (2016) 247 Cal.App.4th 746, 756.)

"Under these principles, the threshold issue here is whether defendant was detained when he gave consent. . . . The dispositive question is whether, "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave" [citation].' [Citation.]" (*Zamudio*, *supra*, 43 Cal.4th at p. 341.) The test is objective, not subjective. (*Ibid*.) The question is therefore "'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' [Citation.]" (*In re J.G.* (2014) 228 Cal.App.4th 402, 409.) In determining "the coercive effect of police conduct as a whole," we may consider whether multiple officers were present, if any of the officers displayed a weapon, and whether the officer's language or tone indicated that compliance was compelled rather than voluntary. (*Id*. at pp. 409-410.)

Here, the evidence indicates that the encounter between Officer Voors and Taylor was entirely consensual. About thirty seconds into the conversation, Taylor handed Officer Voors his wallet. After speaking for about three minutes, Officer Voors asked, "Do you have anything illegal on you at all?" and "Would it be alright [*sic*] if I checked?" Taylor responded, "Yeah." Shortly after that, Officer Voors asked, "You said nothing illegal on you right?" Taylor responded, "No sir." Officer Voors asked, "Cool if I check real quick?" Taylor said, "Yeah." Nothing about the language or tone of either Officer Voors or Taylor suggests that compliance was compelled rather than voluntary. "Approaching a person, requesting to speak with him, [and] asking for permission to search him . . . do not transform an otherwise consensual encounter into a detention." (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 57, fn. 3.)

10

There were two officers present, because by the time of the search Corporal Tibbetts had arrived to the scene.  But neither displayed a weapon, and the arrival of a second officer is not a show of force that shifts a consensual encounter into a detention.  (Compare *In re J.G., supra*, 228 Cal.App.4th at p. 411 [the presence of four uniformed officers and three marked patrol cars when minor defendant gave consent to search a backpack suggested a detention rather than a consensual encounter].)  The presence of Corporal Tibbetts, without more, does not suggest that the consensual encounter became a detention before Taylor gave consent to the search.

The totality of the circumstances therefore indicates that Taylor's consent to the search was freely provided, and Taylor was not detained at the time he gave consent.  The search therefore did not infringe Taylor's constitutional rights to be free of unreasonable searches and seizures.

### B.    Search incident to Taylor's arrest

The prosecution also argued that even if Taylor had been unlawfully detained and therefore had not given valid consent to search, the evidence inevitably would have been discovered due to Taylor's outstanding warrant and the related arrest.  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  (*Arizona v. Gant* (2009) 556 U.S. 332, 338.)  "Evidence need not be suppressed as 'fruit of the poisonous tree,' though actually procured as the result of a Fourth Amendment violation against the defendant, if it inevitably would have been obtained by lawful means in any event."  (*People v. Boyer* (2006) 38 Cal.4th 412, 448.)  "'The question is whether the evidence was obtained by the government's exploitation of the illegality or whether the illegality has become attenuated so as to dissipate the taint.  [Citation.]'  [Citation.]"  (*Ibid.*)

"[T]he general framework for analyzing a claim of attenuation under the Fourth Amendment is well settled.  [Citation.]"  (*People v. Brendlin* (2008) 45 Cal.4th 262, 268-269 (*Brendlin*).)  We consider "the three *Brown* factors—i.e., the temporal proximity of the unlawful seizure to the subsequent search of the defendant's person or vehicle, the presence of intervening circumstances, and the flagrancy of the official misconduct in

11

effecting the unlawful seizure." (*Brendlin*, *supra*, 45 Cal.4th at p. 269, citing *Brown v. Illinois* (1975) 422 U.S. 590, 603-604.)

An outstanding warrant, discovered prior to a search that reveals contraband, attenuates the taint of an unlawful stop. (*Brendlin, supra*, 45 Cal.4th at pp. 269-270.) Courts have "'have all but unanimously concluded that, in this kind of situation, this first *Brown* factor'"—temporal proximity—"'is outweighed by the others.' [Citation.]" (*Brendlin*, *supra*, 45 Cal.4th at p. 270; see also *Utah v. Strieff* (2016) ___U.S.___, 136 S.Ct. 2056, 2062 [where an officer found contraband "only minutes after the illegal stop," temporal proximity did not bar admission of the evidence].)

"As to the second *Brown* factor, the case law uniformly holds that an arrest under a valid outstanding warrant—and a search incident to that arrest—is an intervening circumstance that tends to dissipate the taint caused by an illegal traffic stop." (*Brendlin*, *supra*, 45 Cal.4th at p. 271.) Once an officer discovers that a defendant has an outstanding warrant, the officer has an obligation to arrest the defendant. (*Strieff, supra,* 136 S.Ct. at pp. 2062-2063.) And once the officer is authorized to arrest the defendant, "it [is] undisputedly lawful to search [the defendant] as an incident of his arrest to protect [the officer's] safety." (*Id.* at p. 2063.)

The third *Brown* factor, the flagrancy of the official misconduct, "is generally regarded as the most important because 'it is directly tied to the purpose of the exclusionary rule—deterring police misconduct.' [Citation.]" (*Brendlin*, *supra*, 45 Cal.4th at p. 271.) Here, the third factor is not applicable because as we held above, the evidence indicates that the encounter was entirely consensual. (Compare *Strieff*, *supra*, 136 S.Ct. at p. 2063 [the officer was negligent because he "should have asked Strieff whether he would speak with him, instead of demanding that Strieff do so."].) Even if we were to assume that Taylor was illegally detained at the time of the search, there is no evidence to support a finding that Officer Voors "had a design and purpose to effect the stop 'in the hope that something [else] might turn up.' [Citation.]" (*Brendlin*, *supra*, 45 Cal.4th at p. 271.) Small or negligent errors in police judgment in effecting a stop

12

"hardly rise to a purposeful or flagrant violation of [a defendant's] Fourth Amendment rights." (*Strieff*, *supra*, 136 S.Ct. at p. 2063.)

In short, Officer Voors's discovery of Taylor's warrant before the search of Taylor's backpack sufficiently attenuated any arguable illegality of the search. The trial court did not err by denying Taylor's motion to suppress the evidence.

We have examined the entire record, and are satisfied no arguable issues exist in the appeal before us. (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Kelly* (2006) 40 Cal.4th 106, 110; *Wende*, *supra*, 25 Cal.3d at p. 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



COLLINS, J.

We concur:



EPSTEIN, P. J.



MANELLA, J.


13